"This matter is before the court on defendant’s request for review of Trial Judge Spector’s denial of defendant’s motion for a protective order covering three documents copies of which were inadvertently turned over to plaintiffs counsel in the course of discovery.
*766 "The relevant facts are these: In this suit for alleged breach by the Government of a long-term helium contract, the Trial Judge ordered discovery of extensive papers of the Office of Management and Budget (OMB), the Department of the Interior and the White House. The defendant asserted two separate sorts of privilege as to various documents: a claim of executive privilege and claims of attorney-client privilege and also privilege under the attorney work-product rule. Three of the documents covered by the claim of privilege were nevertheless handed over to plaintiffs lawyers in circumstances described in an affidavit by a then newly appointed Assistant General Counsel of the Office of Management and Budget, a Mr. Newton. This affidavit asserts (as paraphrased in Trial Judge Spector’s order below) 'that on April 14, 1976 four attorneys for plaintiffs arrived at his office to inspect materials OMB was willing to show them. Handicapped by inexperience in the matter, the affiant nevertheless acknowledges that he went through the materials on three occasions in order to remove "all copies of privileged material from the material to be reviewed by plaintiffs’ counsel.” When requested to make copies of items in the remaining material, his practice was to further check the request against a list of documents as to which privilege had been claimed. Not seeing these particular papers on the list, he agreed to and did provide copies. Later, on April 20, 1976, Mr. Newton sent information copies to defendant’s assigned counsel, and 10 days later was advised by the latter that he "had erred” because the "March 4, 1976 affidavit and claim of privilege of James Lynn did not contain a full list of all documents for which privilege had been claimed (it does not cover the attorney client privilege claims copies of which claims are not in OMB’s file) * * *.” "The affidavit continues:
I used that list when asked to copy the copies of the privileged documents found by plaintiffs’ counsel in the material I supplied them for inspection. The 'Lynn list’ contains no reference to either the July 19, 1974 memorandum or '8/23/74’ routing slip. Thus I had no qualms about their release. Since the original of the August 19, 1974 memorandum is stapled to the '8/23/74’ routing slip as were to the best of my recollection the *767 copies copied, I can only assume that I viewed the package as unitary, did not note the dates of individual documents attached to the routing slip, and since the routing slip was not listed felt it was safe to supply copies of it and its attachments.’
"On the basis of these facts the defendant moved for a protective order requiring the return, non-disclosure, and non-use in evidence of the three documents. Accepting defendant’s claim that the disclosure was inadvertent, Trial Judge Spector nevertheless held that any claimed privileges had been lost by virtue of the disclosure even though inadvertent. A precisely similar problem had arisen in National Helium Corp. v. United States, No. 158-75, and the defendant had made a similar motion for a protective order. On July 9, 1976, Trial Judge Schwartz granted the motion; there was no request for review of that order. Trial Judge Spector acknowledges that his order is in 'fundamental disagreement’ with that of Trial Judge Schwartz.
"We hold that the requested protective order should have been issued in this case as well as in National Helium.[1] On the facts before us, it is clear that (a) the disclosure was inadvertently made by the Assistant General Counsel of OMB, (b) privilege had previously been claimed by the Government as to each of the three documents, (c) neither the Department of Justice nor the officials of the agencies involved who executed the claims of privilege intended at any time to waive the privileges or to disclose the documents, and (d) the Assistant General Counsel had only the ministerial duty of handing over documents for which privilege had not previously been claimed by other Government officials. Unless the rule is that any privilege ends with disclosure, no matter how accidental or inadvertent the disclosure and no matter by whom the disclosure is made, the defendant is entitled to prevail on its motion. We do not believe that the rule has such a wide sweep.
"Since the three documents were all claimed under the attorney-client privilege and the law of disclosure has had *768 more consideration in connection with that particular privilege, we confine our discussion to that area. It is settled that the attorney-client privilege, and the consequent right of confidentiality, belongs to the client alone. Hunt v. Blackburn, 128 U.S. 464, 470 (1888); 'only the client can waive this privilege . . .,’ Conn. Mutual Life Ins. Co. v. Shields, 18 F.R.D. 448, 451 (S.D.N.Y. 1955); 'The attorney-client privilege is personal to the client. The attorney cannot waive it, only the client can,’ Magida v. Continental Can Co., 12 F.R.D. 74, 79 (S.D.N.Y. 1951); '. . . only the client can unseal his attorney’s lips,’ Timken v. Roller Bearing Co. v. United States, 38 F.R.D. 57, 64 (N.D. Ohio 1964); 'For the attorney-client privilege is personal to the client, and can only be waived by the client,’ Nixon v. Sampson, 389 F. Supp. 107, 153 (D.D.C. 1975), stay granted 513 F.2d 430, 168 U.S. App. D.C. 172 (1975); see also Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2nd Cir. 1967). We know of no case in which an attorney was held to have been able to waive the privilege of a client who had previously indicated that he wanted to assert the privilege. In Underwriter Storage Inc. v. United States Rubber Co., 314 F. Supp. 546, 549 (D.D.C.), the client turned over a large number of documents to its attorney without restriction as to their use; the attorney disclosed one of them inadvertently. In those circumstances the court imputed the erroneous disclosure to the client but the significant fact is that the client itself was not shown to have ever invoked the privilege or to have indicated any reliance on the privilege.
"Here, the Assistant General Counsel of OMB was plainly not the client — i.e. the United States or the Federal Government — in any sense. His was only the ministerial duty of turning over documents not listed in claims of privilege previously made by others in the Federal Government who had substantive concern with the litigation and with possible claims of privilege. Those other officials never in the slightest gave any indication of waiving the privilege or withdrawing the claim. The Assistant General Counsel may have been acting as a lawyer, but his duties and his scope were very tightly restricted; he had no authority, express or implied, to determine what was privileged, to *769 waive the privilege, or to countermand the positions taken by those who had previously claimed the privilege. His sole function was to hand over copies of the documents for which privilege had not previously been claimed by other officials; he had no other authority.
"it is therefore ordered and concluded that the Trial Judge’s order of January 13, 1977 is reversed and the defendant’s motion for a protective order is granted.”

 This request for review does not involve at all the issue of whether privilege was properly claimed for the three documents now involved. The only current question is, assuming arguendo that the documents were privileged, did their inadvertent disclosure waive or dissipate the privilege?