We are asked by the defendant to reverse Trial Judge Spector’s procedural order denying defendant’s second motion for production of ten specified documents.[1] That *613 motion sought to obtain copies of these documents which had previously been shown to defendant’s counsel (along with other documents) for his inspection (but not to remove for copying). Plaintiff objected to the second motion on the ground that the ten documents now sought[2] were privileged from disclosure under the attorney-client or attorney work-product privileges, and that the prior disclosure to the Government’s counsel was wholly inadvertent. The trial judge denied defendant’s motion on the authority of the court’s earlier order in a companion case, Cities Service Helex, Inc. v. United States, 214 Ct. Cl. 765 (May 20, 1977), in which the court ruled that a mistaken disclosure by the Government in certain circumstances did not waive privileges which were otherwise applicable to the documents handed over.
In seeking to overturn the trial judge’s order in this case, the Government does not contend that the documents were never privileged but urges only that any privilege was waived when defendant’s representative was allowed to see them. From an uncontradicted affidavit by plaintiffs house or local counsel (Mr. Conoley), we take the facts to be as follows:[3] After the Government filed its first motion to produce calling for a large number of documents, plaintiff was willing to produce all discoverable documents for inspection at plaintiffs office near Liberal, Kansas; Mr. C.A. Conoley, the local or house counsel for plaintiff, was responsible for such production. He directed a Mr. Burrows, an employee of plaintiff, "to assemble all files possibly containing discoverable documents and to search such files for me for all attorney-client writings and to flag and to otherwise bring to my attention all such writings. I further advised Mr. Burrows that it would be satisfactory to examine only those files which normally would be expected to contain attorney-client writings and that it would not be necessary for him to examine every file.” Burrows assembled for production approximately 150 storage cartons of files, virtually all of which had been in *614 storage for the past several years without being reviewed. After Mr. Conoley had reviewed and removed all attorney-client writings,[4] the cartons (together with an index) were made available for inspection by the Government’s attorneys. None of the files thus turned over to the defendant without prior examination by Mr. Conoley was labeled so as to put him on notice that it contained attorney-client writings. Also, none of the ten documents now in question was flagged or brought to Mr. Conoley’s attention by Mr. Burrows or anyone else, and Mr. Conoley states that he "did not know nor have reason to know that the writings were in the files inspected by” defendant’s attorneys. The affidavit concludes "that at no time did I [Mr. Conoley] or any other attorney to my knowledge, intend to permit the Defendant to inspect the aforedescribed writings [the ten documents now involved] or to waive attorney-client privilege appertaining thereto.”
The overriding principle is that only the client can waive the attorney-client privilege. Cities Service Helex, Inc. v. United States, supra, 214 Ct. Cl. at 768. However, a disclosure by the client, even if not specifically intended, can be a waiver in certain circumstances. See United States v. Kelsey-Hayes Wheel Co., 15 F.R.D. 461 (E.D. Mich. 1954); Underwriter Storage Inc. v. United States Rubber Co., 314 F.Supp. 546 (D.D.C. 1970). Here, the client — plaintiff National Helium Corporation — actively sought, through Messrs. Conoley and Burrows, to keep all attorney-client documents from inspection by defendant. A procedure to effectuate that purpose was established and followed, but it failed as to these ten writings, without the knowledge or acquiescence of those who were supposed to screen out such privileged material. It seems clear to us that, as a subjective matter, plaintiff wished to retain its privilege as to all attorney-client documents. The only question is whether the procedure followed by plaintiff was so lax, careless, or inadequate that plaintiff must objectively be considered as indifferent to disclosure of anything which happened to be shown to the Government.
Defendant indicts the plaintiff as showing a lack of care and general indifference because it did not screen all the *615 boxes of documents, document by document, in the 30 months between the trial judge’s order directing general production and the Government’s inspection. In view of the very large amount of materials to be gone through — about 150 cartons were actually produced for inspection — we do not consider that plaintiff was required to undertake that burdensome and expensive chore.[5] An employee (Burrows) had been directed to search in the files normally expected to contain attorney-client writings and to flag any such he found. Presumably that was done, but the ten documents now involved were not among those found or flagged. Nor was there any other reason to know that the ten papers contained privileged matter. Unless we are to demand individual screening of each separate document produced, no matter how voluminous the number, we cannot say that the procedure plaintiff followed in this instance was lax, careless, inadequate, or indifferent to consequences. It seems to us to have been, in the circumstances, a good faith, sufficiently careful, effort to winnow a relatively small number of privileged materials from a very large volume of documents to be produced under the general order to produce.[6]
This is not as compelling a case for retention of the privilege as Cities Service Helex, Inc., supra.[7] But that decision does not represent the only situation in which privilege can be kept despite inadvertent disclosure. For *616 that type of problem, the fundamental questions always are: did the client wish to keep back the privileged materials and did he take adequate steps in the circumstances to prevent disclosure of such documents? In this case, as we have discussed, we give an affirmative answer to both questions. Accordingly, plaintiff did not waive its attorney privileges when it inadvertently allowed the Government’s representative to see the ten documents.[8]
it is therefore ordered that Trial Judge Spector’s order of November 30, 1978, denying defendant’s second motion for production of documents is affirmed and said second motion is denied.

 Although the trial judge did not certify the question under Rule' 53(c)(2)(i), we accept the request for review under Rule 53(c)(2) (ii) and consider it on its merits.

 Plaintiff has supplied copies of all the other documents inspected by defendant’s counsel.

 Defendant characterizes the statements in this affidavit as "post hoc rationalizations,” but we must accept these sworn statements, which appear credible, in the absence of anything tending to discredit them. See also footnote 5, infra.

 There is no suggestion that Mr. Conoley personally reviewed any documents other than those he had reason to believe were attorney-client writings, through flagging by Mr. Burrows or otherwise.

 Discovery is already expensive enough, in many cases, without adding to its cost by the detailed screening of masses of documents which defendant says is always required, on pain of losing a privilege. A flat requirement of document-by-doeument screening would probably help avoid some camouflaged changes of mind by the document-possessor but the price of such across-the-board preventive hygiene seems to us too high, especially in a case like this in which we have no reason to doubt plaintiffs indication that it would have screened out the ten documents if they had been discovered before inspection.

 Defendant points out that, at the time the documents were handed over for inspection, plaintiff made no reservation that privilege might later be asserted. Obviously that was because plaintiff mistakenly though that it had already picked out all attorney-client writings. Moreover, we do not see how such a general reservation, unrelated to specific papers, would have aided defendant in any material way.

 There, the Government had previously claimed the privilege as to the particular documents, the Government and its clearly authorized legal representatives always intended to retain that privilege for the specific documents, and the Assistant General Counsel of the Office of Management and Budget who physically handed them over had only ministerial authority to pass on documents as to which no privilege was claimed by the proper representatives of the Federal Government.

 Neither party contends that there are different rules for attorney-client writings, on the one hand, and for attorney work-product materials, on the other. Argument has been wholly in terms of the attorney-client privilege. Thus, we have treated the case as if only that type privilege is involved (though it may be that both types of document are in fact among the ten).