**TELEPHONICS CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 92–846C.

United States Court of Federal Claims.

Nov. 23, 1994.

Philip J. Davis, Washington, DC, Atty. of Record, for plaintiff. Wiley, Rein & Fielding, of counsel.

George M. Beasley, III, Washington, DC, with whom was Asst. Atty. Gen., Frank W. Hunger, for defendant. Maj. Barry Williams, U.S. Army Litigation Center, of counsel.

## ORDER

HARKINS, Senior District Judge.

■ The complaint in this case, filed December 10, 1992, seeks an equitable adjustment under a contract with the Army, Communications Electronic Command (CECOM) awarded on October 31, 1989, for manufacture and delivery of radar sets. Final delivery of all radars was not complete on October 24, 1994.

As part of discovery, defendant on July 15, 1993, submitted interrogatories and requested documentary production. In preparation to respond, plaintiff's outside counsel reviewed approximately 30 boxes of documents, comprising tens of thousands of pages. The ongoing contract file was included. The documents were ready for inspection in September 1993, but because of illness of defendant's counsel, defendant did not send personnel to inspect the documents until July 25 and 26, 1994. Defendant's eight-man examination team included three lawyers and agency personnel.

During the course of inspection, defendant's personnel found a document (WR & F Analysis) clearly marked in bold capital letters: "PRIVILEGED AND CONFIDENTIAL/ATTORNEY–CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT." This document was a letter dated July 29, 1992, that had been prepared by plaintiff's

outside counsel; it assessed the merits of the case and discussed potential litigation and negotiation strategies. The letter was addressed to plaintiff; a copy was sent on July 30, 1992, to another outside counsel of plaintiff.

When defendant's personnel found the WR & F Analysis, the discovery was not brought to the attention of representatives of plaintiff's counsel who were present at all times during the document review. Defendant's personnel apparently passed the document for examination to all eight members of its examination team, one of whom took extensive notes of its contents.

Defendant marked the WR & F Analysis for copying. A copy of the WR & F Analysis has not been produced. Plaintiff's counsel removed it from documents to be produced and notified defendant that it was being withheld on the basis of the attorney/client privilege and work product doctrine.

On October 6, 1994, defendant filed a motion to compel production of the WR & F Analysis. The motion attached a document captioned "Notes from Telephonics' Legal Memo" which apparently is an electronic facsimile. It is marked DAJA–LTT, Aug–23–1994 17:35.

Defendant's motion asserts that any claim of attorney-client privilege or attorney work product doctrine has been waived, citing *Carter v. Gibbs*, 909 F.2d 1450 (Fed.Cir.1990), *In re Sealed Cases*, 877 F.2d 976 (D.C.Cir.1989), and other cases that found waiver in situations where there was a voluntary, inadvertent, or careless disclosure of documents asserted to be privileged.

There is no per se rule that a waiver must be found in all situations where there is a mistaken or inadvertent production of a privileged document. There are many factual circumstances in which the privilege can be kept despite inadvertent disclosure. All circumstances that surround an inadvertent disclosure must be considered. In the Court of Claims, the criteria was expressed as "fundamental questions always are: did the client wish to keep back the privileged materials, and did he take adequate steps in the circumstances to prevent disclosure of such docu-

ments." *National Helium Corp. v. United States*, 219 Ct.Cl. 612, 616, 1979 WL 10176, *3 (1979). In *National Helium*, the Court of Claims found no waiver after the plaintiff undertook a "good faith, sufficiently careful, effort to winnow a relatively small number of privileged materials from a very large volume of documents to be produced ..." 219 Ct.Cl. at 615, 1979 WL 10176 at *2.

The precautions taken by Telephonics were reasonable and careful. In its response to defendant's requests for production of documents, Telephonics noted it did not intend to produce any documents covered by the attorney/client privilege or attorney work product doctrine. Plaintiff's outside counsel and a paralegal spent two days reviewing the documents to protect against production of any privileged material. They found and removed two copies of the WR & F Analysis during their review. The WR & F Analysis was the only privileged document in 30 boxes containing many thousands of pages. The document was stamped with an appropriate protective legend in bold capital letters so that even someone taking a cursory review of the document would recognize the protected nature of the material. Upon learning that defendant had identified and sought to obtain a copy of the WR & F Analysis, plaintiff notified defendant in writing of its continuing claim of privilege, and withheld the document from production.

Courts have maintained these privileges even in cases in which more than one privileged document had been inadvertently produced. *See, e.g., Lois Sportswear v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985) (22 privileged documents); *National Helium*, 219 Ct.Cl. at 616, 1979 WL 10176 at *3 (10 privileged documents); *In re Grand Jury Investigation*, 142 F.R.D. 276, 281 (M.D.N.C.1992) (18 privileged documents).

There is an issue of fairness in Telephonics inadvertent disclosure. To find a waiver in the circumstances here would be particularly harsh. Notwithstanding plaintiff's steps to mark the document and notify defendant of its intent not to produce privileged material, and notwithstanding plaintiff's counsel being on site during the actual production or otherwise available, defendant did not alert plain-

tiff when it found the WR & F Analysis. Instead, defendant shared the document with its several representatives at the production and took notes on the document. It is only because defendant had not undertaken its review of plaintiff's documents until some 10 months after the material was ready for inspection that the document in question reappeared in the previously purged boxes as a consequence of on-going contract administration.

In *Alldread v. City of Grenada*, 988 F.2d 1425 (5th Cir.1993), the Fifth Circuit affirmed a detailed review of the issue of inadvertent disclosure. *Id.* at 1433–35. Circumstances to be considered include a five part test:

    (1) the reasonableness of the precautions taken to prevent disclosure;

    (2) the amount of time taken to remedy the error;

    (3) the scope of discovery;

    (4) the extent of the disclosure; and

    (5) the overriding issue of fairness.

*Alldread*, 988 F.2d at 1433, *accord Lois Sportswear*, 104 F.R.D. at 105; *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y.1993); *Shriver v. Baskin–Robbins Ice Cream Co.*, 145 F.R.D. 112, 115 (D.Colo. 1992); *In re Grand Jury Investigation*, 142 F.R.D. at 278–79; *Federal Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 482 (E.D.Va.1991); *Monarch Cement Co. v. Lone Star Indus., Inc.*, 132 F.R.D. 558, 560 (D.Kan.1990); *Bud Antle, Inc. v. Grow–Tech, Inc.*, 131 F.R.D. 179, 183 (N.D.Cal.1990).

A determination whether to maintain the attorney/client and work product privileges encompasses an analysis of the intent of the party seeking protection of the document. *See, e.g., Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 543 (S.D.N.Y.1994) ("[a] waiver must be intentional ... to be effective"); *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 954 (N.D.Ill.1982) (same). Courts also consider the number of inadvertent disclosures and the harshness of requiring the production of privileged material. *See, e.g., Lois Sportswear*, 104 F.R.D. at 105.

In *National Helium*, plaintiff had not undertaken a page-by-page review for privi-

leged documents and no such obligation was found. The Court of Claims noted that the producing party "did not screen all the boxes of documents, document by document, in the 30 months between the trial judge's order directing general production and the Government's inspection." 219 Ct.Cl. at 614–15, 1979 WL 10176 at *2. The court stated:

    Unless we are to demand individual screening of each separate document produced, no matter how voluminous the number, we cannot say that the procedure plaintiff followed in this instance was lax, careless, inadequate, or indifferent to consequences. It seems to us to have been, in the circumstances, a good faith, sufficiently careful, effort to winnow a relatively small number of privileged materials from a very large volume of documents to be produced under the general order to produce.

In the Court of Claims analysis, it would be an undue burden to require the plaintiff to review documents that should not have contained privileged material.

    ■ In its motion, defendant noted that, because the document has already been read by a number of plaintiff's opponents, waiver is appropriate "since the court has no power to expunge the disclosed information from the minds that now contain it." It is true that this situation is one that involves sealing the bag from which the cat already has escaped. Defendant also asks, however, that the order should provide "that defendant may question deponents and propound interrogatories and requests for production of documents bearing on the subject matter covered by the memorandum in question, without regard to the assertion by plaintiff that the matter is covered by the attorney client or work product privileges." Such a result would give recognition and reward to defendant's sharp practices at the examination, and is contrary to standards reasonably pertaining to discovery conduct.

On the basis of the foregoing,

IT IS ORDERED defendant's motion to compel production of the WR & F Analysis is DENIED.