United States as beyond the jurisdiction of the Court.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–828T.

United States Court of Federal Claims.

March 10, 1997.

Reeves C. Westbrook, Washington, DC, for plaintiff. Newman T. Halvorson, Jr., Sean F. Foley, and Benjamin Y. Lieber, Covington & Burling, of counsel.

Stuart J. Bassin, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## ORDER [1]

MILLER, Judge.

This matter is before the court on plaintiff's Motion for a Protective Order Directing the Return of Four Privileged Documents Inadvertently Produced in the Course of Expedited Discovery filed on February 6, 1997. Defendant responded on February 18, 1997, and plaintiff replied on February 20, 1997. The issue is whether plaintiff's inadvertent disclosure of four documents in response to defendant's request for production of documents waived the attorney-client and/or work product privileges that initially attached to said documents. Argument is deemed unnecessary.

On August 20, 1996, plaintiff filed its motion for partial summary judgment, asking the court to rule as a matter of law that "plaintiff is entitled to U.S. foreign tax credits for Italian local income taxes paid with respect to royalties received from an Italian subsidiary in the years 1982, 1983, and 1984." Plf's Br. filed Aug. 20, 1996, at 1. On September 6, 1996, defendant served its first request for production of documents and interrogatories on plaintiff. Believing that defendant's document request went well beyond the scope of RCFC 56(g), plaintiff filed, on September 25, 1996, a Motion Pursuant to Rule 12(i) To Suspend Discovery. By order entered on October 10, 1996, the court required defendant to withdraw its first set of interrogatory and document requests. How-

---

1. This order entered on February 26, 1997. It is being refiled pursuant to RCFC 52.1(b) as a published order at defendant's request.

ever, the court permitted defendant to continue with discovery to a limited extent:

> Notwithstanding the foregoing, the court allows defendant additional discovery, but restricts defendant to the discovery it requires, consistent with the standards of Rule 56(g), to meet plaintiff's motion. The discovery granted to defendant is limited to that which is "directly related to the principle issues" raised by plaintiff's motion for partial summary judgment. *Opryland USA, Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 852 (Fed.Cir. 1992). The court expects defendant to so frame its requests, and plaintiff should not object to them.

*International Business Machines Corp. v. United States,* No. 95–828T, at 3 (Fed.Cl. Oct. 10, 1996).

Pursuant to this order, defendant, on October 15, 1996, served plaintiff with a second request for interrogatories and production of documents. In response to this discovery request, plaintiff produced the requested documents on November 5, 1996. As part of its response, plaintiff included the following statement:

> "The documents produced herewith are produced in good faith without waiver of or prejudice to plaintiff's right to assert the appropriate privileges with respect to the withheld documents. In reviewing and producing the accompanying documents on an expedited basis it is possible that plaintiff inadvertently has produced one or more documents falling into a privileged category, in which event plaintiff reserves its right to seek to withdraw such documents from production upon its becoming aware of such inadvertent production."

Plf's Br. filed Feb. 6, 1997, at 3 (quoting discovery responses).

On December 5 and 6, 1996, during the deposition of Messrs. Robert N. Mattson and Terence M. Gleeson, plaintiff first learned

that it had produced three privileged documents in response to defendant's discovery request. The first document was prepared by Covington & Burling at plaintiff's request and addresses an issue arising from an audit of plaintiff's 1975 and 1976 tax years. The second document was prepared by an Italian lawyer, Avv. Yorick Spolidoro, and addresses the World Trade Corporation's ("WTC") prospects for litigating the applicability of the pre–1982 ILOR tax.[2] The third document was prepared by Robert Stone, one of plaintiff's senior in-house attorneys, and concludes that plaintiff should litigate the pre–1982 ILOR tax. Upon learning of the disclosure of the three privileged documents, plaintiff's counsel noted an immediate objection on the record. On December 10, 1996, defense counsel wrote to plaintiff's counsel expressing its "preliminary view" that plaintiff had waived any applicable privilege that may have attached to the three documents. Plaintiff's counsel, by letter dated December 20, 1996, again requested the return of the three privileged documents. On December 26, 1996, defense counsel wrote to plaintiff's counsel indicating that defendant would not return the documents. On January 22 and 23, 1997, during a deposition in Italy, plaintiff learned that a fourth privileged document had been produced to defendant. This document, authored by an Italian lawyer, Cogliati Dezza, assessed WTC's litigation prospects for the pre–1982 period. Once again, plaintiff's counsel noted an objection on the record and requested that defendant return the document.

## DISCUSSION

As an initial matter, defendant does not dispute that the attorney-client and work product privileges apply to the four documents at issue. Instead, defendant argues that plaintiff waived both privileges when it produced the documents to defendant.[3]

---

2. WTC is a subsidiary of plaintiff.

3. Neither party addressed the issue of whether the differences between the attorney-client and work product privileges affect the analysis in this case. In certain factual scenarios, the differences between the privileges might alter the outcome. *Carter v. Gibbs,* 909 F.2d 1450, 1451

(Fed.Cir.1990) (en banc); *Transamerica Computer Co. v. International Business Machines Corp.,* 573 F.2d 646, 647 n. 1 (9th Cir.1978). In the case at bar, however, because the disclosure was made to an adversary in litigation, the outcome will be consistent with regard to both privileges. *Carter,* 909 F.2d at 1451; *Transamerica Computer,* 573 F.2d at 647 n. 1.

Plaintiff counters that the inadvertent nature of the disclosure does not constitute a waiver.

### 1. The controlling law

Federal courts are split on the issue of whether an inadvertent disclosure constitutes a waiver of the attorney-client and/or work product privilege:

> When privileged material is revealed through discovery, therefore, the courts are presented with a powerful argument under conventional privilege law that waiver has occurred and potent counterpressure that waiver decisions take account of the rigors and realities of modern discovery, particularly document production. As the courts themselves recognize, they have split into at least three camps. First, some courts adhere to the traditional view that any disclosure is a waiver, no matter what precautions were taken to avoid it.
>
> A second view precludes waiver from ever occurring due to unintended disclosure through discovery on the ground that ordinarily the disclosure is made by or at the behest of counsel, not the client who holds the privilege, and that waiver can only occur if the privilege-holder sanctions it. . . .
>
> Many courts have taken a third position that recognizes the burdens of discovery and the reality that lawyer errors can in some instances waive client privileges. These courts commonly look to a series of factors in deciding whether to hold that a given disclosure should be regarded as waiving the privilege that would otherwise attach to the materials produced.

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2016.2 (2d ed. 1995) (citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir.1991) (example of third position); *In re Sealed Case,* 877 F.2d 976 (D.C.Cir.1989) (example of first position); *Smith v. Armour Pharmaceutical Co.,* 838 F.Supp. 1573 (D.Fla.1993) (example of second position)).

The parties disagree as to which of the above rules this court should apply to resolve the instant dispute. Defendant, citing the Federal Circuit's decision in *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990) (en banc), encourages the court to hold that the inadvertent disclosure of a privileged document waives the privilege.[4] Plaintiff, on the other hand, citing the United States Court of Claims decision in *National Helium Corp. v. United States,* 219 Ct.Cl. 612, 616, 1979 WL 10176 (1979), argues that this court should apply the third approach discussed by Wright *et al.,* which considers the disclosing party's subjective intent and the objective quality of the precautions taken to prevent disclosure.[5]

In *National Helium* the Court of Claims rejected a *per se* waiver rule for the inadvertent disclosure of a privileged document. The court considered whether the disclosing party intended to invoke the protection afforded by the work product and attorney-client privileges and whether the disclosing party took adequate measures, given the circumstances, to prevent disclosure: "For that type of problem, the fundamental questions always are: did the client wish to keep back the privileged materials and did he take adequate steps in the circumstances to prevent disclosure of such documents?" *Id.; see Cities Serv. Helex, Inc. v. United States,* 214 Ct.Cl. 765, 767, 618 F.2d 121 (1977).

Recently, the Federal Circuit applied what appears to be a different test for determining whether the disclosure to an adversary in litigation of an internal memorandum protected by the work product privilege constitutes a waiver of the privilege. *Carter,* 909 F.2d at 1451.[6] The Federal Circuit found

---

**4.** Alternatively, defendant argues that, if the court were to follow the test suggested by plaintiff, plaintiff has failed to prove that it established sufficient screening mechanisms to prevent the *disclosure of privileged documents.*

**5.** Plaintiff also cites *Telephonics Corp. v. United States,* 32 Fed.Cl. 360 (1994), a case decided by Senior Judge Harkins after *Carter,* for the propo-

sition that "[t]here is no per se rule that a waiver must be found in all situations where there is a mistaken or inadvertent production of a privileged document." *Id.* at 361.

**6.** Although the Federal Circuit's holding in *Carter* addressed the issue of waiver of the work product privilege, not the attorney-client privilege, the Federal Circuit offered clear guidance for decid-

that the disclosure, despite its inadvertent nature, resulted in a waiver:

It is irrelevant whether the attachment was inadvertent, as the government alleges. Voluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege; in these circumstances, the criteria for waiver of the work product and attorney client privileges are equivalent. Granting the motion would do no more than seal the bag from which the cat has already escaped.

*Id.* (citations omitted).

 While *Carter* strongly suggests that the Federal Circuit has adopted an absolute rule of waiver for inadvertent disclosure of work product to adversaries in litigation and for inadvertent disclosure of confidential client communications to third parties, it did not expressly overrule the approach applied by the Court of Claims in *National Helium.* In this jurisdiction decisions of the Federal Circuit and the Court of Claims have binding precedential authority. When the Federal Circuit decides that a decision of the Court of Claims no longer merits precedential authority, it overrules the decision, after providing sufficient explanation, in an en banc decision:

The present adoption [of the law of the Court of Claims] does not affect the power of this court, sitting in banc, to overrule an earlier holding with appropriate explication of the factors compelling removal of that holding as precedent. If conflict appears among precedents, in any field of law, it may be resolved by the court in banc in an appropriate case.

*South Corp. v. United States,* 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982) (*en banc*). Because the Federal Circuit in *Carter* neither ad-

dressed nor expressly overruled *National Helium,* this court must continue to apply the test approved by the Court of Claims.[7]

2. *Application of the National Helium test*

 As the party moving for a protective order, plaintiff bears the burden of establishing that it is entitled to the relief it seeks. RCFC 26(c). Under *National Helium* plaintiff must prove that it did not intend to disclose the privileged documents and that, despite the inadvertent disclosure, plaintiff took adequate steps, given the circumstances, to prevent the disclosure. 219 Ct.Cl. at 616. The parties do not dispute that plaintiff satisfied the first prong of this test.

 To determine whether plaintiff satisfied the second prong of the *National Helium* test, the court must consider the adequacy of the screening mechanisms employed by plaintiff to prevent disclosure of the privileged documents. Plaintiff's motion for a protective order does not contain affidavits or declarations from the attorneys responsible for screening the relevant documents. Instead, plaintiff's brief offers a narrative description of its screening efforts. This proffering of factual representations without an adequate evidentiary basis violates Appendix H of the Rules of the Court of Federal Claims:

1. Factual Matters. Factual representations, other than those pertaining to procedural aspects of the case which are personally known to the signatory attorney, will be disregarded unless supported by:

a. A witness' affidavit or a declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746, attached to the motion or

---

ing the issue of the inadvertent disclosure of a document protected by the attorney-client privilege. Because the attorney-client privilege protects confidential communications between lawyer and client, any disclosure of a confidential communication to a third party waives the privilege. *Carter,* 909 F.2d at 1451.

**7.** Had the Federal Circuit expressly overruled *National Helium,* this court would agree with defendant's position that the inadvertent disclo-

sure of a privileged document to an adversary in litigation always waives the applicable privilege. While the court must wait for express instructions from the Federal Circuit, it expects that, given the broad language employed in *Carter, National Helium* will be overruled. Other circuits have already held that the inadvertent disclosure of a privileged documents constitutes a waiver. *See Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 883 (1st Cir.1995); *In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989).

found in the pleadings or elsewhere in the record;

 b. The transcript of a deposition or of trial testimony;

 c. The testimony of a witness who appears at the hearing on the motion;

 d. Any of the other submissions referred to in RUSCC 56(c); or

 e. Any other evidence that would be admissible at trial.

Because the factual representations made by plaintiff's counsel do not concern a "procedural aspect of the case," ¶ 1 of Appendix H requires the court to disregard the factual representations proffered in plaintiff's motion for a protective order. *See National Helium*, 219 Ct.Cl. at 613 (noting affidavit of disclosing attorney); *Cities Service Helex*, 214 Ct.Cl. at 766 (same).

■ Assuming, *arguendo*, that plaintiff's factual representations comply with the requirements of Appendix H, plaintiff nonetheless has failed to provide the court with sufficient evidence of the precautions it took to ensure that privileged documents would not be disclosed. "[Determining whether the inadvertent disclosure of a privileged document constitutes a waiver] requires a detailed court inquiry into the document practices of the party who inadvertently released the document." *Gray v. Bicknell*, 86 F.3d 1472, 1484 (8th Cir.1996); *see Telephonics Corp. v. United States*, 32 Fed. Cl. 360, 361 (1994) ("All circumstances that surround an inadvertent disclosure must be considered."); Wright *et al.*, *supra*, § 2016.2 (explaining that test "involves significant scrutiny of the adequacy of efforts to guard against disclosure of privileged materials").

■ Plaintiff's motion for a protective order offers only a cursory glimpse of the precautions taken by plaintiff to prevent disclosure:

At the specific request of both the Court and the government, IBM undertook this global effort pursuant to an expedited discovery schedule, completing the production on November 5, 1996, barely three weeks after the requests were received. Wedged into this three-week period was an unavoidably rapid review by plaintiff's counsel of the entire production for responsiveness and privilege. In the rush to organize and produce the documents, and despite plaintiff's careful and deliberate precautions, the four privileged documents described above slipped through the review undetected.

Plf's Br. filed Feb. 6, 1997, at 2.[8] In its reply brief, plaintiff provided some additional detail of its screening procedure, adding that "[e]very document in the production was screened for responsiveness and privilege by at least one of the attorneys, usually Mr. Lieber, and many documents were the subject of group discussion." Plf's Br. filed Feb. 20, 1997, at 7–8.

Plaintiff's conclusory representations of fact do not enable the court to determine whether or not plaintiff took sufficient steps to prevent disclosure of the privileged documents. The insufficient quality of plaintiff's representations is best appreciated when compared to the representations made by the disclosing party in *Cities Service Helex*. In that case the disclosing attorney testified by way of affidavit that he had reviewed the documents to be produced on three separate occasions and then, on a fourth occasion, once again checked the documents against a privilege log prepared by another attorney. 214 Ct.Cl. at 766. Likewise, in *National Helium*,[9] the disclosing attorney detailed his

---

8. To show that it employed sufficient screening procedures, plaintiff notes that it attached a statement to plaintiff's document response reserving the right to withdraw inadvertently produced documents. *See supra* pp. 600–02. As the Court of Claims explained, this statement does not advance plaintiff's efforts to obtain a protective order:

 Defendant points out that, at the time the documents were handed over for inspection, plaintiff made no reservation that [a claim of] privilege might later be asserted. Obviously that

was because plaintiff mistakenly though[t] that it had already picked out all attorney-client writings. Moreover, we do not see how such a general reservation, unrelated to specific papers, would have aided defendant in any material way.

*National Helium*, 219 Ct.Cl. at 615 n. 6.

9. By citing *National Helium*, the court is not engaging in a comparison between the quality of the screening efforts in that case and the case at bar. Rather, the court cites the case to demon-

screening process, explaining that he delegated initial screening responsibilities to an employee, that he instructed the employee to inspect only those files that normally would be expected to contain privileged documents, and that none of the documents disclosed to the opposing party had been shown to him by the employee. 219 Ct.Cl. at 614–15.

Unlike the disclosing parties in *Cities Service Helex* and *National Helium,* plaintiff has failed to discuss 1) what instructions were given to Mr. Lieber by Messrs. Westbrook and/or Halvorson; 2) whether or not Mr. Lieber identified as privileged the four documents which are the subject of the present dispute when he reviewed all of documents selected for production; 3) whether, as part of the group discussions, Messrs. Westbrook and/or Halvorson reviewed the four privileged documents; and 4) whether the four privileged documents were recorded on plaintiff's privilege log. Having failed to educate the court about its screening procedures, plaintiff has not established that it took sufficient steps to prevent the disclosure of the privileged documents.

## CONCLUSION

Accordingly, based on the foregoing, plaintiff's Motion for a Protective Order Directing the Return of Four Privileged Documents Inadvertently Produced in the Course of Expedited Discovery filed on February 6, 1997, is denied.

**IT IS SO ORDERED.**

strate the specificity of the factual representations made by the disclosing party's attorney. Although plaintiff argues that its screening mechanisms were more stringent than those employed by the disclosing attorney in *National Helium,* the court cannot perform such a comparison because plaintiff has failed to detail the quality of its screening process.