**GULF GROUP GENERAL ENTERPRISES CO. W.L.L., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Nos. 06–835C, 06–853C, 06–858C, 07–82C.

United States Court of Federal Claims.

May 14, 2011.

Iliaura Hands, Miller & Williamson LLC, New Orleans, LA, for the plaintiff. With her was Machale A. Miller, Miller & Williamson LLC, New Orleans, LA.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Timothy P. McIlmail, Senior Trial Counsel, Deborah A. Bynum, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, Washington, D.C. Of counsel, Stacey K. Grigsby, Kent C. Kiffner, Lartease M. Tiffith, and Russell J. Upton, Commercial Litigation Branch.

## ORDER

HORN, J.

For the upcoming, consolidated trial in the above numbered cases, plaintiff Gulf Group General Enterprises Co. W.L.L. (Gulf Group) lists Clea Efthimiadis as a witness on the April 15, 2011 joint witness list. Plaintiff advises that Ms. Efthimiadis is expected to testify "regarding the award of contracts to Gulf Group, the termination of the [Gulf Group] contracts, her involvement in the preparation of the final decision[s] dated May 21, 2007 signed by [contracting officer] Joseph Libbey regarding Gulf Group's certified claims, including the substance of the infor-

mation she obtained, the documents she reviewed and the individuals she interviewed." Noting that Ms. Efthimiadis was a civilian attorney for the United States Army in Kuwait, defendant filed an April 26, 2011 motion in limine to strike Ms. Efthimiadis from the witness list.

Ms. Efthimiadis provided a declaration, which was attached to defendant's motion in limine to strike her testimony. Ms. Efthimiadis states that she currently is employed as a civilian attorney with the Navy, and was employed as a civilian attorney by the Army, in Area Support Group-Kuwait, from September 4, 2005—February 12, 2011. She arrived at Camp Arifjan, Kuwait on September 4, 2005, where the contracts at issue were awarded and terminated. She stated that, after Gulf Group filed a "claim [in this court] against the Army, in late 2006," she prepared litigation reports for the United States Department of Justice. In this regard, complaints were filed in Case No. 06–835C on December 8, 2006, in Case No. 06–858C on December 15, 2006, in Case No. 06–853C on December 19, 2006, and in Case No. 07–82C on February 1, 2007. Ms. Efthimiadis' view of her role for the Army was to supply the Department of Justice with litigation reports, a "written statement of all facts, information, and proofs" on Gulf Group's claims, in accordance with 28 U.S.C. § 520 (2006).

To this end, Ms. Efthimiadis states that she interviewed Colonel Brick Miller (now retired and on plaintiff's witness list for trial), who offered information about Gulf Group's contract performance on the latrines contract, Case No. 06–858C. Furthermore, defendant's counsel acknowledged in a March 16, 2011 letter to plaintiff's counsel that Ms. Efthimiadis was informed by Mr. Tijani Saani, Chief of Army Contracting in Kuwait, and then Major John Cockerham, that Lieutenant Colonel John Hess, Director of Army Contracting in Kuwait, ordered the terminations of the Gulf Group contracts. Mr. Saani is not listed as a witness, but Colonel Hess is on plaintiff's witness list for trial. Ms. Efthimiadis also emailed former Major John Cockerham, asking about the Gulf Group contract terminations, and received an

**650**

email in return, which is designated as Plaintiff's Trial Exhibit 1024. In her declaration, Ms. Efthimiadis states that she believes her email to Mr. Cockerham and his response to her were covered by the attorney-client privilege. She states in her declaration that she was attempting to collect information "to determine what possible defenses were available to the Army," regarding the terminations of the Gulf Group contracts. Ms. Efthimiadis also states that she provided information she had obtained to Randall [Andrew] Kemplin, another Army civilian attorney, who was assisting contracting officer Joseph L. Libbey to prepare contracting officer final decisions on Gulf Group's claims. Mr. Cockerham has been listed as a trial witness by both parties. Mr. Libbey is on plaintiff's witness list for trial. Ms. Efthimiadis states in her declaration that she has no personal knowledge of the awards or terminations of Gulf Group's contracts.

Ms. Efthimiadis, therefore, appears to have had two roles with the Army, one, in her words, "to prepare litigation reports to aid the Department of Justice in defending the matter," and two, in her words, to assist Mr. Kemplin "in helping Mr. Joseph Libbey, a Contracting Officer, prepare the court directed final decisions."[1]

*Agreement Not to Call Ms. Efthimiadis as a Witness*

■ Defendant first argues that plaintiff agreed not to call Ms. Efthimiadis as a witness at trial. Defendant states that this agreement was memorialized in the parties' February 11, 2011 joint status report with respect to Mr. Kemplin, with the same agreement later extended to Ms. Efthimiadis, as reflected in plaintiff's March 11, 2011 status report. Defendant's quotation in its motion in limine of the operative language in the joint status report agreement includes deviations from the actual language, both large and small. The words below in brackets were in the joint status report, but omitted by defendant in its motion in limine. The words below with strike-throughs were not in the joint status report, but were added by the defendant to the motion in limine. Defendant states in its motion in limine:

This agreement was memorialized in the parties' joint status report, dated February 11, 2011 wherein the parties stated:

With respect [to] plaintiff's request to depose Mr. Kemplin, the parties have resolved the dispute. Plaintiff has agreed not to take Mr. Kemplin's deposition and the Government has agreed that it will provide plaintiff a letter identifying any ~~factual~~ [other] witnesses ~~that~~ [who] provided ~~any~~ information, [and the substance of the information,] that was ~~provided to Mr. Kemplin and~~ used in drafting the facts section of the contracting officer's final decisions in case nos. 06–835, 06–853, 06–858.

Defendant's failure to quote the joint status report language correctly is inexplicable, and calls into question the standard of care which defendant devotes to its filings. When defendant's counsel indicates he is quoting material, he should quote the material verbatim. The above "quote" is inadequate even as a paraphrase of the parties' agreement, having left out completely a key part of the agreement, that defendant would provide plaintiff with "the substance of the information" obtained by Ms. Efthimiadis from the personnel she interviewed. Plaintiff points to this part of the agreement with defendant, and defendant's failure to satisfy it, as the reason for needing to call Ms. Efthimiadis as a witness at trial. The court agrees with plaintiff, and finds a letter defendant sent to plaintiff on March 16, 2011 does not meet the requirements of the agreement and does not

1. Gulf Group's Case No. 06–835C was assigned originally to Senior Judge Loren A. Smith, who stayed the case and directed the contracting officer to issue a final decision on plaintiff's claim pursuant to 41 U.S.C. § 605(c)(5) (2006). Based on this direction, Gulf Group's present counsel in the current litigation submitted a certified claim to the contracting officer, dated March 26, 2007. The original, October 10, 2005 Claim and Settlement Offer submitted to the agency, as well as the initial, December 8, 2006 complaint in this court, were attached to Gulf Group's subsequent March 26, 2007 claim to the contracting officer. On May 21, 2007, the contracting officer issued a final decision on Gulf Group's claim, awarding Gulf Group $33,053.00 in Case No. 06–835C. Senior Judge Smith lifted the stay, and directed that Gulf Group file an amended complaint, which Gulf Group did on June 29, 2007.

provide plaintiff with the "substance of the information." Although defendant tries to suggest that the March 16, 2011 response to plaintiff is adequate, the letter provides only the briefest of information, and not the "substance of the information" called for by the parties' agreement.[2]

*Calling Opposing Counsel as a Witness*

■ Defendant also argues that the court should not permit plaintiff to call a government counsel as a witness, inasmuch as other means exist to obtain the information, the information to be elicited is privileged, and the information is not critical to the plaintiff's case, citing *Sparton Corp. v. United States,* 44 Fed.Cl. 557, 563 (1999) ("Pursuant to the *Shelton* test, [opposing counsel's] deposition would be appropriate and necessary if Sparton could demonstrate that (1) no other means exist to obtain the information than to depose [opposing counsel]; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of Sparton's case.") (citing *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327–28 (8th Cir.1986)); *see also Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 263 F.R.D. 1, 8 (D.D.C.) (relying on the *Shelton* test when deponent is opposing counsel), *recons. denied* (D.D.C.2009); *King–Fisher Co. v. United States,* 58 Fed.Cl. 570, 571 (2003) ("This court also finds that *Shelton* provides useful standards to apply in considering the question of deposing an opposing party's counsel.").

*Other Means to Obtain the Information*

Defendant points out that Ms. Efthimiadis claims to have no personal knowledge of the awards and terminations of Gulf Group's contracts, and that all she knows was gleaned from others with first hand knowledge, such as Colonel Miller and former Major Cockerham, both of whom have been listed as witnesses for trial. Plaintiff responds that

Army civilian attorney Kemplin's deposition revealed that he wrote the factual portion of contracting officer Libbey's final decision, and that Mr. Kemplin, in turn, obtained his factual information from Ms. Efthimiadis. Ms. Efthimiadis, in her declaration, stated that she "provided various information to Mr. Randall Kemplin, another Army attorney to assist him in helping Mr. Joseph Libbey, a Contracting Officer, prepare the court directed final decisions." Plaintiff seeks, for example, to know what facts Ms. Efthimiadis provided Mr. Kemplin for purposes of preparing the contracting officer's final decision, in order to enable plaintiff to trace the facts from their source through the various individuals involved in the process. Plaintiff is entitled to explore, through the testimony of Ms. Efthimiadis, its theory of the Army's apparently shifting basis for what plaintiff alleges were the improper terminations of Gulf Group's contracts. In this case, the plaintiff should not have to rely, as defendant proposes, on the testimony and credibility of former Major Cockerham, given his apparent role in the allegedly improper contract administration of the Gulf Group contracts. In this instance, duplicative testimony may be appropriate and useful to determine liability in this case.

*Privileges*

■ Defendant also claims that Ms. Efthimiadis' testimony is protected by attorney-client and work product privileges. The attorney-client privilege protects confidential communication by a client to an attorney in order to secure legal advice. The United States Court of Appeals for the Federal Circuit has stated:

> The attorney-client privilege is the client's right to refuse to disclose confidential "communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. U.S. Int'l*

---

2. Defendant makes another disingenuous argument: "given that Gulf Group did not depose Ms. Efthimiadis during discovery, Gulf Group does not know what Ms. Efthimiadis's trial testimony would be and, thus, her testimony cannot be crucial to Gulf Group's case. Indeed, the fact that Gulf Group did not notice Ms. Efthimiadis' deposition creates a strong presumption that Gulf Group did not perceive Ms. Efthimiadis's

testimony as 'crucial.'" It appears from the information provided to the court that the plaintiff did ask to depose Ms. Efthimiadis, but did not notice Ms. Efthimiadis' deposition as a result of the agreement of the parties, which, if defendant had abided by, would have provided the "crucial" information from Ms. Efthimiadis to the plaintiff and negated the need to have her appear at trial.

Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir.1997); see also Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged."); Black's Law Dictionary 1235 (8th ed. 2004). The privilege "encourag[es] full and frank communication between attorneys and their clients" and "recognizes that sound legal advice ... depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). But the privilege "belongs to the client, who alone may waive it." In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed.Cir.2007) (en banc) [, cert. denied sub nom. Convolve, Inc. v. Seagate Tech., LLC, 552 U.S. 1230, 128 S.Ct. 1445, 170 L.Ed.2d 275 (2008) ]. An attorney may not assert the privilege against the client's wishes or against the client himself. See Am. Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 745 (Fed.Cir.1987) ("The privilege is that of the client, not that of the attorney.").

In re United States, 590 F.3d 1305, 1309 (Fed.Cir.2009), reh'g and reh'g en banc denied (Fed.Cir.2010), cert. granted sub nom. United States v. Jicarilla Apache Nation, —— U.S. ——, 131 S.Ct. 856, 178 L.Ed.2d 622 (2011) (other citations omitted; alteration in original).

■ The work product doctrine protects documents prepared in anticipation of litigation. See Upjohn Co. v. United States, 449 U.S. at 398, 101 S.Ct. 677 ("[Federal] Rule [of Civil Procedure] 26(b)(3) codifies the work-product doctrine," with the Rule discussing documents "prepared in anticipation of litigation...."); In re Seagate Tech. LLC, 497 F.3d at 1375–76 ("The work product doctrine is 'designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute.'" (quoting In re Martin Marietta Corp., 856 F.2d 619, 624 (4th Cir.1988), cert. denied sub nom. Pollard v. Martin Marietta Corp., 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989))); Deseret Mgmt. Corp. v.

United States, 76 Fed.Cl. 88, 92–94 (2007) (citing the court's counterpart Rule 26(b)(3) of the Rules of the United States Court of Federal Claims, which similarly discusses documents "prepared in anticipation of litigation...."); Pacific Gas and Elec. Co. v. United States, 69 Fed.Cl. 784, 789, recons. denied, No. 04–74C, 2006 WL 6735871 (Fed. Cl. Mar. 9, 2006). Documents created for other purposes or created in the ordinary course of business, used or proven useful in later litigation, are not considered protected by the work product doctrine. Id. at 790.

■ Defendant, without elaboration, states in brief, conclusory fashion that, "[t]o the extent Gulf Group intends to question Ms. Efthimiadis about the award, termination, or final decisions relating to the subject contracts, about her understandings and beliefs as to why the contracts were terminated, such perceptions, understandings, and beliefs are covered by the attorney-client and work product privileges." Plaintiff responds that the fact-finding duties of the contracting officer were apparently delegated to Ms. Efthimiadis, who happens to be an attorney. Plaintiff's argument is that the factual basis for the contracting officer's final decision could have been obtained by the contracting officer himself, a contracting specialist or other non-attorney, and not raise the issue of privilege. Ms. Efthimiadis acknowledges in her declaration that she performed two roles, one to prepare a litigation report for the Department of Justice in support of litigation, and the other to provide facts to assist the contracting officer prepare his contracting officer's final decisions. It is this second role that plaintiff properly should be able to explore. Defendant acknowledges that factual information from Ms. Efthimiadis is not privileged, and it is hard to argue that information regarding how the contracting officer decisions were arrived at is not relevant.

### Crucial to Plaintiff's Case

■ As noted earlier, defendant argues that since plaintiff did not depose Ms. Efthimiadis, her testimony could not have been considered crucial by plaintiff. Plaintiff responds that the defendant objected to having Ms. Efthimiadis deposed, and that the stale-

mate was supposed to be resolved by the agreement between the parties, which, as described above, defendant misquoted in its motion to the court. The agreement was that plaintiff would forego the testimony at trial and, therefore, also the deposition of Ms. Efthimiadis, so long as defendant provided plaintiff with "the substance of the information" provided to her by the individuals Ms. Efthimiadis interviewed. The court concluded earlier that defendant's March 16, 2011 letter to plaintiff was inadequate in providing the substance of the factual information obtained by Ms. Efthimiadis. Plaintiff is entitled to attempt to make out its case regarding the reasons for, and the nature of, the contract terminations, and it is appropriate for plaintiff to explore what it alleges is the shifting and improper basis for the contract terminations.

*Former Major Cockerham's Email to Ms. Efthimiadis*

Defendant also argues that the email response from former Major Cockerham to Ms. Efthimiadis' email query as to the basis for the terminations of Gulf Group's contracts is an attorney-client communication and, therefore, privileged. Defendant argues that in this instance Ms. Efthimiadis was "collecting information to use in analyzing the Government's possible defenses in these matters in preparing the litigation reports for the Department of Justice." Plaintiff argues that any privilege regarding this email has been waived through disclosure.

Former plaintiff's counsel Ferdinand F. Peters provided an affidavit, attached to plaintiff's response to the April 26, 2011 motion in limine, stating that: "Sometime in 2007 I received an email from Mrs. Efthimiadis enclosing the attached email exchange between her and Maj. John Cockerham regarding the termination of Gulf Group's contracts." Mr. Peters attached the Cockerham email to Mr. Peters' affidavit in the filing with the court. Mr. Peters also had given a copy of the Cockerham email to Gulf Group's current counsel, and the email is listed as Plaintiff's Trial Exhibit 1024. Ms. Efthimiadis' declaration responds that:

I have also been informed that Gulf Group claims that I gave a copy of Mr. Cockerham's previously referenced e-mail to Gulf Group's attorney, Ferdinand Peters. This is not true. I did not provide a copy of this e-mail to anyone outside the employment of the United States Government. Moreover, I have never met Mr. Peters.

With respect to Ms. Efthimiadis' last comment, it would not have been necessary to meet Mr. Peters to send him the Cockerham email. The reality is that former plaintiff's counsel Peters and present plaintiff's counsel are in possession of the Cockerham email. It is likely that someone in government, either intentionally or inadvertently, sent Mr. Peters the Cockerham email. Plaintiff has offered an explanation of how that occurred in Mr. Peters' affidavit. Defendant has not offered an explanation of how plaintiff came into possession of the Cockerham email.

As to whether the government waived the attorney-client privilege, in *Blue Lake Forest Products, Inc. v. United States,* the court stated:

"There is no per se rule that a waiver must be found in all situations where there is a mistaken or inadvertent production of a privileged document." *Telephonics Corp. v. United States,* 32 Fed.Cl. 360, 361 (1994). Under the two-part test set forth in *National Helium,* an inadvertent disclosure does not waive the document's privileged nature if the party: (1) "wish[ed] to keep back the privileged materials" and (2) took "adequate steps in the circumstances to prevent disclosure of such documents." *Nat'l Helium Corp. v. United States,* 219 Ct.Cl. 612, 615–16 (1979); *see also Alaska Pulp Corp., Inc. v. United States,* 44 Fed. Cl. 734, 735–36 (1999); *Int'l Business Machines Corp. v. United States,* 37 Fed.Cl. 599, 602 (1997).

*Blue Lake Forest Prods., Inc. v. United States,* 75 Fed.Cl. 779, 798 (2007); *see also In re Seagate Tech. LLC,* 497 F.3d at 1375.

Mr. Cockerham's email was dated February 7, 2007. Mr. Peters stated in his affidavit that the email came into his possession "sometime in 2007." There is no indication that the Cockerham email was stamped to reflect that it was considered by the govern-

ment to be privileged, either in 2007 or thereafter. Nor is there any indication that whoever disclosed the Cockerham email took any steps to retrieve the email or otherwise protect it. Defendant's counsel only responds that he became aware that the Cockerham email was in plaintiff's possession "a few weeks ago." The government's posture on protecting the Cockerham email appears to be of recent vintage, and the court questions whether the government took adequate steps to prevent disclosure of the Cockerham email, or retrieve and protect the email.

█ Even though there appears to be a dispute between the parties on whether the Cockerham email was disclosed intentionally or by mistake, the contents of the email either were intentionally disclosed or no steps were taken to retrieve it for quite a number of years, thereby waiving any privilege. The contracting officer's final decisions on the three termination claims were all issued on May 21, 2007. Ms. Efthimiadis acknowledges engaging in fact-finding and providing the results of her fact-finding efforts to Army civilian attorney Kemplin, who in turn supplied the information from Ms. Efthimiadis to contracting officer Libbey in support of development of Mr. Libbey's May 21, 2007 contracting officer's final decisions. Moreover, two of the May 21, 2007 contracting officer's final decision address, in even greater detail than the Cockerham email, the security matters at issue. The contracting officer's final decision on the dumpster Blanket Purchase Agreement (BPA), W912D1–04–P–0897, at paragraphs 3, 4, 5, 6, 7 and 9, addresses the security concerns and termination. The contracting officer's final decision on the latrine BPA, W912D1–04–P–0932, similarly addresses, at paragraphs 6, 7, 8, 9 and note 2 at Bates page no. 3859, the security concerns and termination in the Cockerham email. Therefore, whether or not the Cockerham email began as a part of the development of a litigation report, it appears to have become a part of the fact-finding exercise and used in support of developing the contracting officer's final decisions. Defendant's belated concerns about protecting the contents of the Cockerham email are further undermined by Mr. Cockerham's deposition and expected trial testimony. In

attempting to argue the lack of need for Ms. Efthimiadis' testimony, defendant acknowledges that the Cockerham deposition and anticipated trial testimony address the security matters which appear in the Cockerham email. Plaintiff is entitled to pursue its theory of the alleged shifting and improper bases for the terminations of the Gulf Group contracts. The court concludes that the Cockerham email is not privileged.

*Inquiry Regarding Terminations*

Defendant also improperly argues that any inquiry into the contracting officer's decision to terminate Gulf Group is irrelevant, since the court will be proceeding de novo, citing *Wilner v. United States,* 24 F.3d 1397 (Fed. Cir.1994). The United States Court of Appeals for the Federal Circuit dealt with a delay claim in *Wilner* and cited the Contract Disputes Act, 41 U.S.C. § 609(a)(3) (2006), to the effect that claims are to proceed *"de novo,"* findings of fact by the contracting officer are not binding on the court, the contracting officer's final decision is not treated as the decision of a lower tribunal which is accorded special deference, and the correctness of the contracting officer's final decision is not presumed. *See Wilner v. United States,* 24 F.3d at 1401–02. *Wilner,* however, dealt with guidance for resolving a delay claim, as the *Wilner* court specifically pointed out: "This means that when the claim being asserted by the contractor is based upon alleged government-caused delay, the contractor has the burden of proving the extent of the delay, that the delay was proximately caused by government action, and that the delay harmed the contractor." *Id.* at 1401. This court, however, has before it very different claims, involving allegations of improper contract terminations, which in turn raise issues of the basis for and propriety of those contract terminations.

The United States Court of Appeals for the Federal Circuit addressed the propriety of a termination for the convenience of the government in *T & M Distributors, Inc. v. United States,* 185 F.3d 1279 (Fed.Cir.1999). Under the facts of *T & M Distributors,* the Federal Circuit found that the termination

for the convenience of the government was proper:

> We do not scrutinize *de novo* whether termination was the best course. In the absence of bad faith or clear abuse of discretion, the contracting officer's election to terminate for the government's convenience is conclusive.
>
> . . .
>
> Specifically, there is nothing to indicate bad faith or abuse of discretion on the part of the contracting officer. It was not unreasonable for him to find that a 450 percent error in the original solicitation could have affected the pool of bidders. That being the case, we are not prepared to say that he acted unreasonably or abused his discretion in concluding that the circumstances called for a new procurement with corrected requirements to satisfy CICA's requirement of full and open competition.

*Id.* at 1283–84 (citations and footnote omitted).

In fact, the parties' joint statement of issues submitted to the court in preparation for trial in the above numbered *Gulf Group* cases, reflects agreement that the Army's basis for the contract terminations is a legitimate issue to be decided by the court at trial. *See* Amended Joint Statement of Issues of Fact and Law, dated May 3, 2011, at ¶¶ 7, 12, 14, 26, 30, 31, 297, 298, 307, 308, 333, 334, and 335.

## CONCLUSION

For the foregoing reasons, defendant's motion in limine is **DENIED.** Ms. Efthimiadis may be called as a witness at trial.

**IT IS SO ORDERED.**