## In re the REGENTS OF the UNIVERSITY OF CALIFORNIA, Petitioner.

### Miscellaneous No. 471.

United States Court of Appeals, Federal Circuit.

Nov. 14, 1996.

---

**1387**

Gerald P. Dodson, Arnold, White & Durkee, Menlo Park, CA, submitted the petition for writ of mandamus for petitioner. With him on the petition were Emily A. Evans and Karen J. Kramer. Also with him on the petition was P. Martin Simpson, Jr., The University of California, Office of Technology Transfer, Alameda, CA.

John E. Kidd, Rogers & Wells, New York City, submitted the response to the petition for writ of mandamus for respondent Genentech, Inc. Of counsel was Joseph Ferraro.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, submitted the response to the petition for writ of mandamus for respondent Eli Lilly and Company. Of counsel were Howard W. Levine and Charles E. Lipsey.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

## ORDER

PAULINE NEWMAN, Circuit Judge.

The Regents of the University of California ("UC") petition for a writ of mandamus to the United States District Court for the Southern District of Indiana, to vacate the court's July 2, 1996 order[1] granting Genentech, Inc.'s motion to compel the deposition testimony of three attorneys employed by Eli Lilly and Company.

Judicial orders may be overturned by extraordinary writ only when there has been a clear abuse of discretion or usurpation of judicial authority in the grant or denial of the order. *In re The Regents of the University of California*, 964 F.2d 1128, 1135, 22 USPQ2d 1748, 1754 (Fed.Cir.1992). *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988) ("The federal courts traditionally have used the writ only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' ") (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)); *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed.Cir.1988) ("Mandamus may be employed in exceptional circumstances to correct a clear abuse of discretion or usurpation of judicial power by a trial court.") The petitioner has the burden of establishing that its right to issuance of the writ is clear and indisputable, *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980), and that it lacks adequate alternative means to obtain the relief sought. *Mallard v. United States District Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989).

Genentech argues that discovery orders are not routinely appealable. However, the issue before us is not a routine discovery dispute, but one of attorney-client privilege. A writ of mandamus may be sought to prevent the wrongful exposure of privileged communications. As stated in *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir.1970), *aff'd per curiam*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971), "because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate." *See also, e.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir.1994) ("Mandamus may properly be used as a means of immediate appellate review of orders compelling the disclosure of documents and informa-

---

1. *Genentech, Inc. v. The Regents of the University of California*, MDL Docket No. 912, IP–90–1679–C–D/G (S.D.Ind. July 2, 1996).

tion claimed to be protected from disclosure by privilege or other interests in confidentiality.")

The district court ruled that the attorney-client privilege was waived, or never vested, when the Eli Lilly attorneys provided legal advice and services to UC. This is "not a mere discretionary [ruling] but rather turns on legal questions appropriate for appellate review." *In re Burlington Northern, Inc.,* 822 F.2d 518, 522–23 (5th Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). This case meets the rigorous requirements stated in *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 163 (2d Cir.1992), that mandamus review may be granted of discovery orders that turn on claims of privilege when (1) there is raised an important issue of first impression, (2) the privilege would be lost if review were denied until final judgment, and (3) immediate resolution would avoid the development of doctrine that would undermine the privilege. *See Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964).

This petition arises in connection with consolidated pretrial proceedings in the Southern District of Indiana, established by the Judicial Panel on Multidistrict Litigation in *In re Recombinant DNA Technology Patent and Contract Litigation,* Docket No. 912 (J.P.M.L. Feb. 19, 1992), *aff'd, In re The Regents of the University of California,* 964 F.2d 1128, 22 USPQ2d 1748 (Fed.Cir.1992). The proceedings initially involved six cases, concerning various patents, research arrangements, and license agreements among UC, Genentech, and Lilly, in the field of recombinant DNA technology and its use in the production of human insulin and human growth hormone (hGH). Lilly was a party to various of these actions until December 1994, when Lilly and Genentech stipulated to the dismissal with prejudice of all claims against each other.

In the case in which this petition originated Genentech seeks a declaration that UC's United States Patent No. 4,363,877 (the '877 patent) is invalid, unenforceable, or not infringed by Genentech's production of hGH products. Genentech sought the discovery depositions of three Lilly in-house attorneys relating to the prosecution of the '877 patent and its counterparts in foreign countries. The district court ordered the testimony, but stayed completion of this discovery pending this appeal.

■ Meanwhile, on September 27, 1996 the district court dismissed the declaratory action that had been brought by Genentech (IP–90–1679–C), granting UC's renewed motion for summary judgment on Eleventh Amendment grounds. The district court then requested the Judicial Panel on Multidistrict Litigation to remand the remaining action, IP–92–0223–C, to the Northern District of California for trial. The district court stated that "because the two cases are mirror images, the discovery that has taken place in IP–90–1679–C fully is applicable to IP–92–0223–C." Slip op. at 16. The Multidistrict Panel issued a Conditional Remand Order on October 4, 1996; Genentech states that it has opposed the remand order on the ground that this discovery is incomplete, thus delaying the order's effectiveness, in accordance with Rule 14(f)(ii) of the Panel.

On October 15, 1996 the Federal Circuit ordered UC and Genentech to advise whether this mandamus petition should appropriately be dismissed in view of the district court's action. UC and Genentech are of one mind in opposing dismissal. They point out that the discovery to which this petition is directed is applicable whether or not the consolidation of pre-trial procedures is otherwise terminated, and that completion of the challenged discovery was stayed pending this appeal.

Taking note of the stay in conclusion of the multidistrict proceedings, we agree that we have not been divested of jurisdiction of the petition. For the reasons discussed we grant the writ of mandamus.

## DISCUSSION

On April 19, 1978 UC filed the United States patent application that led to the '877 patent. In September 1978 UC and Lilly entered into an exclusive option agreement for certain license rights to ensuing United States and corresponding foreign patents;

the license would become exclusive upon certain conditions subsequent. Those conditions did occur and the license became exclusive. Lilly agreed to pay the foreign patent costs, and in 1984 Lilly in-house attorneys assumed direct responsibility for prosecuting the foreign patent applications, in collaboration with UC patent counsel. Genentech is seeking to discover the legal advice that was given and that relates to the United States '877 patent.

According to Genentech, the UC and Lilly attorneys frequently discussed certain prior art, which Genentech alleges is material to the '877 United States patent. Genentech states that testimony about those communications is relevant to the issue of inequitable conduct. Genentech also seeks testimony from a Lilly attorney about his investigation and advice to UC concerning errors in the '877 patent, which led to UC's application for a Certificate of Correction. Genentech states that obtaining the Certificate of Correction also involved inequitable conduct by UC.

Genentech argues that an attorney-client communication is not privileged if it is shared with a third party, and that Lilly was a third party despite its status as optionee/licensee. UC responds that the Lilly attorneys represented both UC and Lilly in a shared effort to obtain these United States and foreign patent rights, and that the communications between UC and the Lilly attorneys were protected by the attorney-client privilege. The district court held that "the UC–Lilly relationship arising from the option agreement created no need for a common defense" because "[t]he entities were prosecuting patents, and at that point, apparently were bound only by the prospects of financial gain and heightened reputation." The district court concluded that UC and Lilly did not share the requisite community of interest to allow UC to invoke attorney-client privilege as an exception to the general rule favoring full discovery.

### The Community of Interest Doctrine

▉ When the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege. *See Simpson v. Motorists Mutual Ins. Co.,* 494

F.2d 850, 855 (7th Cir.) ("[W]here the same attorney represents two parties having a common interest, and each party communicates with the attorney, the communications are privileged from disclosure at the instance of a third person."), *cert. denied,* 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974). As explained in *Griffith v. Davis,* 161 F.R.D. 687, 693 (C.D.Cal.1995), "the joint client doctrine typically has been applied to overcome what would otherwise have constituted a waiver of confidentiality because a communication had been shared between two clients."

The protection of communications among clients and attorneys "allied in a common legal cause" has long been recognized. As one court explained:

> [W]here there is consultation among several clients and their jointly retained counsel, allied in a common legal cause, it may reasonably be inferred that resultant disclosures are intended to be insulated from exposure beyond the confines of the group; that inference, supported by a demonstration that the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation, will give sufficient force to a subsequent claim to the privilege.

*In re Grand Jury Subpoena Duces Tecum,* 406 F.Supp. 381, 386 (S.D.N.Y.1975). The issue has previously arisen in connection with patent rights. *See, e.g., Baxter Travenol Labs., Inc. v. Abbott Labs.,* 1987 WL 12919, *1 (N.D.Ill. June 19, 1987) ("A community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents."); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 514 (D.Conn.) ("Whether the legal advice was focused on pending litigation or on developing a patent program that would afford maximum protection, the privilege should not be denied when the common interest is clear."), *appeal dismissed,* 534 F.2d 1031 (2d Cir.1976).

UC argues that it and Lilly were, in the circumstances that here obtained, both clients of the Lilly lawyers, and that UC and Lilly shared a common legal interest in gaining sound patent rights to this technology,

which had been developed by UC and optioned and licensed by Lilly. UC also cites the fact that from the inception of the option agreement, Lilly's license rights had the potential to become and ultimately did become exclusive and that that fact gave Lilly and UC an identity of interest. Thus UC argues that its communications with the Lilly attorneys are subject to the attorney-client privilege, along with Lilly's work product on behalf of UC.

Genentech argues that UC and Lilly lacked the requisite common interest for the attorney-client privilege to attach to the communications between UC and the Lilly attorneys. Genentech also argues that UC was not a client of the Lilly in-house attorneys. Indeed, the Lilly attorneys testified that they considered Lilly, and not UC, to be their "client." However, the issue is not who employed the attorney, but whether the attorney was acting in a professional relationship to the person asserting the privilege. "The professional relationship for purposes of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" *Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978) (quoting McCormick, *Evidence* § 88 at 179 (2d ed. 1972)).

The Lilly attorneys advised and consulted frequently with UC counsel on matters relating to UC's patents. It is not disputed that the Lilly attorneys received confidential information from UC and gave legal advice to UC. However, Genentech argues that even if UC were deemed to be a "client" of the Lilly attorneys, Lilly and UC lacked a common legal interest because UC was the inventor/patentee and Lilly was an optionee and a potential licensee. As we have discussed, in order for the communications between UC and the Lilly attorneys to be protected by the attorney-client privilege, Lilly and UC as clients must share a common legal interest, or have a community of inter-

est, with respect to the subject of the communications. The district court held that the community of interest standard required that "the nature of the interest be identical, not similar, and be legal, not solely commercial," citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C.1974). Although the district court recognized that it was imposing a stringent standard, it relied on *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983) for the proposition that the scope of the attorney-client privilege should be narrowly drawn.

Accepting that the scope of the attorney-client privilege is narrowly drawn in the Seventh Circuit,[2] we conclude that the legal interest between Lilly and UC was substantially identical because of the potentially and ultimately exclusive nature of the Lilly–UC license agreement. Both parties had the same interest in obtaining strong and enforceable patents. The district court erred in concluding that Lilly and UC did not have an identical legal interest in the '877 patent and its foreign counterparts because "a patentee and a nonexclusive licensee do not share identical legal interests." Lilly was more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents. UC is a university seeking valid and enforceable patents to support royalty income. Lilly is an industrial enterprise seeking valid and enforceable patents to support commercial activity. Valid and enforceable patents on the UC inventions are in the interest of both parties. *See Duplan*, 397 F.Supp. at 1172 ("The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.")

Genentech also contends that the communications between UC and the Lilly attorneys are not covered by the privilege because they were not made in anticipation of litigation. It is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation. Persons seek legal advice

2. For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit. *National Presto Indus., Inc. v.*

*West Bend Co.*, 76 F.3d 1185, 1188 n. 2, 37 USPQ2d 1685, 1686 n. 2 (Fed.Cir.1996).

and assistance in order to meet legal requirements and to plan their conduct; such steps serve the public interest in achieving compliance with law and facilitating the administration of justice, and indeed may avert litigation. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). When such pre-litigation advice and assistance serve a shared legal interest, the parties to that interest do not lose the privilege when litigation arises. *See SCM Corp.,* 70 F.R.D. at 513 ("The privilege need not be limited to legal consultations between corporations in litigation situations, however. Corporations should be encouraged to seek legal advice in planning their affairs to avoid litigation as well as in pursuing it.") *See generally* Paul R. Rice, *Attorney–Client Privilege in the United States* § 1:13 (1993) (the attorney-client privilege in the United States is free of the "pending or in anticipation of litigation" limitation).

■ The district court cited *Edward Lowe Indus., Inc. v. Oil–Dri Corp. of America,* 1995 WL 410979 (N.D.Ill. July 11, 1995), for its statement that "the patent prosecution process does not create a need" for the "common defense" privilege. The *Edward Lowe* court, however, held that it would apply the common interest doctrine to documents that "address either anticipated litigation or a joint effort to avoid litigation," *id.* at *2, and observed that *Baxter Travenol Labs., supra,* and *SCM Corp., supra,* are not inconsistent with this general rule. We agree. Consultation with counsel during patent prosecution meets the criteria of compliance with law and meeting legal requirements, thereby reducing or avoiding litigation, and is within the scope of subject matter that is subject to the attorney-client privilege.

■ We conclude that the joint client doctrine and the community of interest doctrine apply to and protect legal advice and communications between the patent applicant or patentee and attorneys of its optionee/licensee.

Accordingly, IT IS ORDERED THAT:

The writ of mandamus is granted. The communications for which discovery is sought are protected by the attorney-client privilege.