108 F.3d 1391
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re UNITED STATES, Petitioner.
 Misc. No. 499.
 United States Court of Appeals, Federal Circuit.
 Feb. 11, 1997.
 
 Before ARCHER, Chief Judge, RICH and NEWMAN, Circuit Judges.
 Order of the court filed by Chief Judge ARCHER. Dissenting order filed by Circuit Judge PAULINE NEWMAN.
 ON PETITION FOR WRIT OF MANDAMUS
 ARCHER, Chief Judge.
 
 ORDER
 
 1
 The United States petitions for a writ of mandamus to direct the United States Court of International Trade to vacate certain deposition orders and to dismiss the underlying action. Cray Research, Inc. does not oppose. NEC Corporation and HNSX Supercomputers Inc. (NEC) oppose.
 
 BACKGROUND
 
 2
 NEC and Cray Research Inc. are competitors for a contract to supply supercomputer systems to a grantee of the National Science Foundation. By the end of February 1996, indications were that NEC would be awarded the contract. Between March and May, the Department of Commerce held interagency meetings concerning the matter. On May 20, Commerce sent a "Predecisional Memorandum" and "Dumping Analysis" to the National Science Foundation that indicated the probability of a high dumping margin on NEC's offer. On July 29, Cray filed with Commerce an antidumping petition regarding supercomputers from Japan. Shortly thereafter, the National Science Foundation announced that it was suspending the procurement until the antidumping matter was resolved. In accordance with the statutory timetable, Commerce's preliminary dumping determination is due on February 25, 1997.
 
 
 3
 On October 15, NEC filed a complaint in the Court of International Trade requesting that Commerce be enjoined from continuing the antidumping investigation, be enjoined from making any determination on the merits, and either terminate the antidumping investigation or appoint an independent party to act as a special master with authority to adjudicate the matter on behalf of Commerce. NEC alleged in its complaint:
 
 
 4
 By pursuing a course of conduct that not only exceeded the Department's authority under the antidumping statute, but violated the GATT Antidumping Code, the U.S.-Japan Supercomputer Agreement, and well-established federal procurement principles, Commerce has revealed itself as the partisan ally of NEC's competitor for the UCAR contract, and has rendered itself constitutionally incapable of adjudicating the merits of Cray's dumping allegation.
 
 
 5
 The basis of NEC's complaint was that Commerce officials improperly interfered with the contract and improperly prejudged the outcome of the antidumping investigation.
 
 
 6
 The United States moved to dismiss NEC's complaint in the trial court for lack of jurisdiction and for failure to state a claim. The Court of International Trade denied the motion to dismiss, determining that under 28 U.S.C. § 1581(i), which provides the trial court with a residual grant of jurisdiction, NEC was not required to exhaust administrative remedies pursuant to 28 U.S.C. § 1581(c) before bringing an action for prejudgment. See 28 U.S.C. § 2637(d). With regard to the motion to dismiss for failure to state a claim, the Court of International Trade determined that, taking the allegations as true at this stage of the proceedings, NEC had alleged a claim of prejudgment. The Court of International Trade set forth an expedited schedule so that it could conduct a trial on the underlying issues and decide the case before the February 25 deadline.
 
 
 7
 At a January 8, 1997 telephone conference, the trial court ordered that Stuart E. Eizenstat, Acting Secretary of Commerce, Susan G. Esserman, Acting General Counsel for Commerce, and Paul L. Joffe, Deputy General Counsel for Commerce could be deposed concerning the issue of prejudgment "on the narrow question of whether or not there is some kind of commitment to Cray which would affect the decisional independence of the Assistant Secretary" in initiating an antidumping investigation. The Court of International Trade was clearly cognizant of the seriousness of ordering the depositions of the Commerce officials concerning their involvement in developing the predecisional memorandum and took steps to focus the scope of the deposition inquiry:
 
 
 8
 I really need to solicit your best efforts on this issue, because I think it's the most difficult to manage in the litigation. There are important competing concerns here, and if we're going to make good law, we have to figure out a way to balance them well. It's certainly true, as [Government counsel] says, that the Government is not required to show absence of bias. And more than that, I think it's also true that we have to design an approach that will respect the deliberative independence of the agency, its decision-making process, and will not be in any way intrusive on the Government's legitimate policy-making efforts. There's no question but what the Department makes policy and the Court relies on that and defers to it. And it does enjoy a presumption of good faith. At the same time, it is always possible that inappropriate factors can intrude in a Governmental decision-making process. And, really, we have to, with some delicacy, explore the question of whether this is a case, as we've said before, like the Heckler case or some other case where there really are inappropriate factors which would unduly affect the independent decision-making of the Assistant Secretary.
 
 
 9
 So it seems to me what I'm going to ask you to try to help me carve here is an approach that, while it doesn't get into the preliminary or the non-deliberative materials of the deliberative materials of the Department, that we do nonetheless give [counsel for NEC] the opportunity to assure himself, or to bring to the Court's attention, any evidence which indicates that there was a commitment to Cray which would unduly affect the Assistant Secretary. So that's the parameter in which I believe I want to ask you to work.
 
 
 10
 At a telephone conference held on January 15, 1997, the Court of International Trade denied NEC's request to depose four other Commerce officials, observing that "I think that our approach here needs to be guided by our respect for the independence and integrity of the deliberative process." In addition, the trial court ordered discovery to proceed on "all documents that concern or relate to the Department's pre-decisional memorandum or to a commitment to a particular outcome with respect to the dumping of vector super-computers produced in Japan." The United States thereafter filed the instant petition for a writ of mandamus.
 
 
 11
 On January 24, 1997, the Court of International Trade conducted a third telephone conference. The trial court revised its earlier deposition ruling and ordered that Acting Secretary Eizenstat need respond only to written interrogatories. In addition, the Court of International Trade determined that it was important for discovery to proceed in an expedited manner because of the
 
 
 12
 extraordinary circumstances present here, essentially two. One, of course, is the February 25th deadline [for the preliminary dumping determination], of which you are all aware and which I think constrains our schedule here significantly. And the other is I think it's important to realize that this isn't a case, of course, that involves a Plaintiff seeking to probe the mental processes of a decision-maker who has made a conclusion based on an administrative record. What we have here, as we've already held, is an allegation of pre-judgment and that an inappropriate influence has compromised the decisional independence of the decision-maker. And I think that distinguishes this case from the instances in which the judiciary has more--has been more limiting with regard to discovery.
 
 DISCUSSION
 
 13
 The United States asks that we direct the Court of International Trade to dismiss NEC's prejudgment complaint. The United States argues that the trial court erred in denying its motion to dismiss because NEC's proper remedy is to seek judicial review under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a following a final determination in the antidumping investigation. The United States contends that, based on NEC's
 
 
 14
 accusations of bad faith, the CIT erroneously excused NEC Corporation from completing requisite administrative procedures in order to obtain immediate judicial review. Under usual circumstances, a respondent, such as NEC, is required to complete the administrative process. If it is dissatisfied with the result, the respondent may seek judicial review based on the administrative record.
 
 
 15
 In support of the United States, Cray argues that NEC cannot interfere with Commerce's statutory authority to investigate possible dumping initiated pursuant to an industry petition by alleging that Commerce's self-initiated investigation was the product of bias and prejudgment. In response, NEC argues that the Court of International Trade has jurisdiction under § 1581(i) to consider the claim that an antidumping investigation is "constitutionally infirm."
 
 
 16
 We decline to consider these issues in the context of a mandamus petition. The court notes that the case is being expedited, and should NEC prevail, the United States can appeal following the entry of a final judgment. Thus, for purposes of disposing of the instant mandamus petition, we confine our consideration to whether the Court of International Trade abused its discretion in ordering the depositions of the Acting General Counsel and the Deputy General Counsel.
 
 
 17
 The remedy of mandamus is available to correct a clear abuse of discretion or usurpation of judicial power. In re Regents of the Univ. of Cal., 101 F.3d 1386, 1387 (Fed.Cir.1996). A party seeking such a writ bears the burden of proving that it has no means of attaining the relief desired, Mallard v. United States Dist. Court of the S. Dist. of Iowa, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). A decision concerning discovery is committed to the ruling tribunal's discretion. See American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 739 (Fed.Cir.1987); Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed.Cir.1984).
 
 
 18
 The United States argues that the Court of International Trade erred in ordering the depositions of the Commerce officials because there was no showing that any officials engaged in bad faith or improper behavior and because the trial court did not find the requisite "extraordinary circumstances" permitting such discovery. See Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586 (D.C.Cir.1985) (absent "extraordinary circumstances," high agency officials should not "be called to testify regarding their reasons for taking official actions"). NEC argues that those principles do not apply when there is no formal administrative record to review. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971) (if there are no formal administrative findings from which to conduct a review, inquiry of administrative officials themselves is permitted).
 
 
 19
 The Court of International Trade determined that there were two extraordinary circumstances that warranted the depositions of the Commerce officials. The transcript of the telephone conference hearings shows that the trial court was especially concerned about the need to decide the case quickly in view of the February 25 deadline. In addition, the trial court narrowly crafted the scope of the inquiry so that the depositions would not be unduly intrusive or require much of the officials' time. It thus appears that the Court of International Trade considered depositions to be the most expeditious approach in this litigation. Further, as noted by the trial court, the practice of deposing government officials is not precluded, when, as in this case, there is an absence of any administrative record. See Overton Park, 401 U.S. at 420 (when there are no formal findings, "the only way there can be effective judicial review is by examining the decisionmakers themselves."). Therefore, under the circumstances presented here, the Court of International Trade's decision to order the depositions of the Acting General Counsel and Deputy General Counsel was not an abuse of discretion. In other words, we conclude that the United States has not established that its right to the issuance of a writ of mandamus is clear and indisputable.
 
 
 20
 Accordingly,
 
 IT IS ORDERED THAT:
 
 21
 The United States' petition is denied.
 
 
 22
 PAULINE NEWMAN, Circuit Judge, dissenting.
 
 
 23
 I respectfully dissent from this court's denial of the United States' mandamus petition.
 
 
 24
 I agree that the government can not conduct a sua sponte antidumping investigation for improper reasons. However, after the antidumping complaint was filed by Cray Research, the Commerce administrators were deprived of the discretion inherent in the criticisms raised by NEC of the various policy-oriented agency activities referred to in the briefs. Even resolving all disputed facts in favor of NEC, the record does not support a prima facie showing or inference that meets the criteria concerning discovery of agency officials. Discovery of the Acting Secretary, Acting General Counsel, and Deputy General Counsel was improperly authorized by the Court of International Trade, and warrants the requested relief. Neither the lack of administrative record, at this admittedly early stage of the investigation, nor the regulatory timetable justifies the intrusion ordered by the court.
 
 
 25
 Although I do not endorse the government's position that a respondent in an antidumping proceeding must always await a final determination before complaining of constitutionally infirm proceedings, NEC has not met the criteria established by precedent for judicial intervention at this stage.