729

B.E. MEYERS & CO., INC., and
Brad E. Meyers, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 97–120C.

United States Court of Federal Claims.

July 27, 1998.

D. William Toone, Bellevue, Washington, DC, for plaintiffs.

Chun–I Chiang, with whom were Assistant Attorney General Frank W. Hunger, Director Vito J. DiPietro, and John Fargo, U.S. Department of Justice, Washington, DC, for defendant.

James G. Gatto, Washington, DC, for nonparty Insight Technology Corporation.

OPINION

BRUGGINK, Judge:

This is an action for patent infringement brought by plaintiffs, B.E. Meyers & Co. and Brad E. Meyers, against the defendant, the United States, pursuant to 28 U.S.C. § 1498 (1994). Pending are the motions for a protective order on the basis of the joint-defense privilege by defendant and Insight Technology, a nonparty to this litigation. The defendant and Insight seek to protect communications, between attorneys for the United States and Insight, the disclosure of which would allegedly violate either the attorney-client privilege or work-product protection. Based on the following reasoning, the motions are hereby granted.

## BACKGROUND

Plaintiffs brought this action against the United States for alleged infringement of three of its patents pertaining to laser-illumination technology. The accused products, which are used by the Department of the Navy, are two types of infrared target pointers/illuminators/aiming lasers. These products are manufactured by Insight Technology under two contemporaneous contracts with the Navy, contract numbers N00164–95–D–0029 (contract 0029) and N00104–95–C–K821 (contract K821).[1]

The contracts between Insight and the Navy contain references to three clauses that are relevant to this motion: the Authorization and Consent Clause; the Notice and Assistance Clause; and the Patent Indemnity Clause. The Authorization and Consent Clause, which is specifically cited in both contracts, provides:

The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder ... and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

48 C.F.R. § 52.227–1(a) (1994). The Notice and Assistance Clause, which is cited only in contract K821, provides:

In the event of any claim or suit against the Government on account of any alleged patent or copyright infringement arising out of the performance of this contract or out of the use of any supplies furnished or work or services performed under the contract, the Contractor shall furnish to the Government, when requested by the Contracting Officer, all evidence and information in possession of the Contractor pertaining to such suit or claim. Such evidence and information shall be furnished at the expense of the Government except where the Contractor has agreed to indemnify the Government.

48 C.F.R. § 52.227–2 (1994).[2] The two contracts refer to two different patent indemnification clauses. Their substance is the same. The Patent Indemnity Clause, which is cited in contract K821, provides:

The Contractor shall indemnify the Government and its officers, agents, and employees against liability, including costs, for infringement of any United States patent ... arising out of the manufacture or delivery of supplies, the performance of services, or the construction, alteration, modification, or repair of real property ... under this contract, or out of the use or disposal by or for the account of the Government of such supplies or construction work.

48 C.F.R. § 52.227–3 (1994). The Patents and Copyright Indemnification Clause of the Defense Federal Acquisition Regulation Supplement, which is cited in contract 0029, provides:

The contractor shall indemnify the Government, against all claims and proceedings for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright arising under this contract, and the contractor shall hold

---

1. Contract 0029 was entered on September 25, 1995, and provided the bulk of the accused products to the Navy. Contract K821 was entered on June 30, 1995, and provided a small quantity of the accused product.

2. The Notice and Assistance Clause is required by regulation to be included in supply, service, and research-and-development contracts. *See* 48 C.F.R. § 27.202–2 (1994).

the Government harmless from any resulting liabilities and losses, provided the contractor is reasonably notified of such claims and proceedings.

48 C.F.R. § 252.211–7003 (1994).

Insight does not appear as a third-party defendant here. According to defendant, Insight and the United States have been communicating regarding potential infringement litigation since September 1996, when plaintiffs notified the United States of its patents. Insight had previously sought a declaratory judgment against plaintiffs in a related case before the U.S. District Court for the Eastern District of Virginia regarding five of plaintiffs' patents. The accused devices in that action included the accused products in this action. That action was settled in December 1996. The settlement agreement does not cover the potential claim against the United States by plaintiffs under 28 U.S.C. § 1498. The settlement agreement, however, obligated plaintiffs to take no action against Insight until resolution of the plaintiffs' claims against the government. It left the option of negotiating another agreement between plaintiffs and Insight after the final disposition of the claim against the government.

On April 14, 1997, defendant filed a motion in this action to notice a third party pursuant to Rule 14 of this court. The motion was granted, and notice was served on Insight. Under RCFC 14, a third party that is served with a notice has forty days to respond by joining the action. Insight did not join in this action. On January 13, 1998, plaintiffs served its second subpoena for documents on Insight. On January 23, 1998, Insight filed a motion to quash and for a protective order. That motion was denied in part on March 27, 1998. The court directed, with respect to plaintiffs' document request number three,[3] Insight and the United States to file a motion for a protective order "addressing the issue of the joint defense agreement between the United States and Insight with respect to the

categories of documents described by paragraphs (a) and (d)." *B.E. Meyers & Co. v. United States*, No. 97–120C, slip op., at 2 (Fed.Cl. Mar. 27, 1998) (order). The specific communications alleged to be privileged have not been reviewed by the court *in camera* and are not the subject of their motions.

## DISCUSSION

Defendant and Insight seek to protect communications between attorneys for the United States and Insight regarding the patents at issue. Defendant's and Insight's motions present the court with a limited question: Was the attorney-client privilege or work-product protection waived as to communications that were intentionally disclosed by a nonparty to counsel for defendant in a patent-infringement suit, where the nonparty is the manufacturer and supplier of the accused products under contract with defendant? The answer is, no.

The attorney-client privilege is strictly construed by the Court of Federal Claims. *See Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996) (citing *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 183 (E.D.Cal.1991)). The privilege attaches to communications made by a client, or a person seeking to be a client, to an attorney outside the presence of third parties for the purpose of securing legal services. *See id.* (citing *United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)). The privilege can be waived by the client or prospective client only if the communication is later disclosed to a third party and the client either did not wish to keep the materials confidential or the client "did not take adequate steps in the circumstances to prevent disclosure" of the privileged communication. *See National Helium Corp. v. United States*, 219 Ct.Cl. 612, 614, 1979 WL 10176 (1979); *International Bus. Mach. Corp. v. United States*, 37 Fed. Cl.

---

3. Document request number three of the second subpoena states, in relevant part:
   To the extent not covered by the preceding two requests, all documents that reflect communications that directly or indirectly reference or relate to the Patents, to B.E. Meyers, or to this

lawsuit, between [Insight] and any of the following: . . . the United States and its agents; . . . Chun–I Chiang; . . . .
(Insight's Mot. to Quash Subpoena and Mot. for Prot. Order of 1/23/98, tab C, at 9.)

599, 603 (1997). *But see Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed.Cir.1990) (en banc) (holding that inadvertent disclosure of communications waived the attorney-client privilege for those communications).

■ The joint-defense doctrine[4] is an extension of the attorney-client privilege. *See United States v. Bay State Ambulance & Hospital Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir.1989) (quoting *Waller v. Financial Corp. of Am.*, 828 F.2d 579, 583 n. 7 (9th Cir.1987)). The doctrine clarifies the protection of attorney-client privilege in certain situations:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client *that otherwise qualifies as privileged* ... that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 126(1) (Proposed Final Draft 1996) (emphasis added); *see also Allendale Mut. Ins. Co. v. Bull Data Sys.*, 152 F.R.D. 132, 140 (N.D.Ill.1993) (stating that doctrine does not act as an independent shield).

The third parties receiving copies of the communication and claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.

*Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C.1974). The doctrine, while well recognized in all circuits that have considered it,[5] has not been addressed by the Court of Federal Claims or by the Federal Circuit in the context of a patent-infringement case brought under 28 U.S.C. § 1498.[6]

The Third Circuit has stated the following test:

> In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381 (S.D.N.Y.1975).

*In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir.1986); *accord Bay State Ambulance*, 874 F.2d at 28 (quoting *Bevill*); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) (quoting *Bevill*); *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C.Cir.1994) (quoting *Bevill*); *see also In re Regents of the University of Cal.*, 101 F.3d 1386, 1389 (Fed.Cir. 1996) (quoting *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381 (S.D.N.Y.1975), which was also cited by *Bevill*). As with other communications that would be protected by the attorney-client privilege, the party asserting the

---

**4.** The doctrine has also been referred to as the common-interest doctrine or the community-of-interest doctrine.

**5.** *See, e.g., United States v. Bay State Ambulance & Hospital Rental Serv., Inc.*, 874 F.2d 20, 29 (1st Cir.1989); *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94–95 (3d Cir.1992); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir.1990); *United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir.1996); *United States v. McPartlin*, 595 F.2d 1321, 1336–37 (7th Cir. 1979) (relying on old Federal Rule of Evidence 503(b)(3)); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922–23 (8th Cir.1997);

*Waller v. Financial Corp. of Am.*, 828 F.2d 579, 583 n. 7 (9th Cir.1987); *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C.Cir.1994); *In re Regents of the University of Cal.*, 101 F.3d 1386, 1389–90 (Fed.Cir.1996).

**6.** The Federal Circuit has applied the doctrine in a patent-infringement suit on appeal from a federal district court. *See In re Regents of the University of Cal.*, 101 F.3d at 1389–90. Because the question was procedural, the court applied the doctrine in light of the Seventh Circuit's approach to the attorney-client privilege. *See id.* at 1390 n. 2 (citing *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1188 n. 2 (Fed.Cir. 1996)).

privilege must also show that "the communication in question was given in confidence and that the client reasonably understood it to be so given." *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989).

The doctrine has been invoked in patent-infringement actions in a variety of contexts. *See In re Regents*, 101 F.3d at 1389–90; *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308, 309–10 (N.D.Cal.1987); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 512–513 (D.Conn.1976); *Duplan Corp.*, 397 F.Supp. at 1172–85; *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y.1969); *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554–55 (N.D.Ill.1964); *Transmirra Prods. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 578–79 (S.D.N.Y.1960). While the participation of two parties in a joint defense in actual litigation provides the strongest argument for protecting communications between the parties' attorneys,

> [t]he privilege need not be limited to legal consultations between corporations in litigation situations.... The timing and setting of the communications are important indicators of the measure of common interest; the shared interest necessary to justify extending the privilege to encompass intercorporate communications appears most clearly in cases of co-defendants and impending litigations but is not necessarily limited to those situations.

*SCM Corp.*, 70 F.R.D. at 513 (footnote omitted). Thus a common interest has been found where two infringing parties who pooled information were sued in separate actions by the same plaintiff. *See Transmirra Prods. Corp.*, 26 F.R.D. at 579.

Application of the doctrine, however, is not limited to situations where the communications were between co-parties to actual infringement litigation. In *In re Regents of the University of California*, the Federal Circuit recognized a joint-defense privilege in communications between the University of California and its optionee/licensee, Eli Lilly Company. In that case, the contractual relationship between Lilly and the university called for Lilly's extensive involvement in prosecuting the licensed patents domestically and internationally. The Federal Circuit concluded:

> Accepting the scope of the attorney-client privilege is narrowly drawn in the Seventh Circuit, we conclude that the legal interest between Lilly and UC was substantially identical because of the potentially and ultimately exclusive nature of the Lilly–UC license agreement. Both parties had the same interest in obtaining strong and enforceable patents.... Lilly was more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents.

*In re Regents of the University of Cal.*, 101 F.3d at 1390.

Similarly, in *Stanley Works*, the district court held that correspondence between plaintiff's staff and patent counsel and a nonparty that had a joint licensing program with plaintiff was still protected. 35 F.R.D. at 555. "Where attorneys for parties having a mutual interest in litigation exchange their work product, it remains protected by a qualified privilege." *Id.* Thus, in *Stix Products*, the district court held "disclosure to counsel for a party with interests adverse to that of the party seeking discovery does not constitute a waiver." 47 F.R.D. at 338. The defendant in *Stix Products* sought to discover communications involving a patent validity opinion regarding defendant's patent provided to nonparty Weiss & Klau by its counsel. The defendant argued that any privilege that could be asserted by Weiss & Klau as to that opinion was waived when Weiss & Klau made the opinion available to plaintiff's lawyers. Apparently, defendant had threatened Weiss & Klau with litigation regarding the same patent that was at issue in the existing litigation. The court found a community of interest between Weiss & Klau and plaintiff to support continuing the privilege. *See id.*

Furthermore, in *Hewlett–Packard*, the district court found that the privilege was not waived where defendant, Bausch & Lomb, disclosed a patent opinion letter to a nonparty during negotiations for the purchase of a division of Bausch & Lomb. *See* 115 F.R.D. at 310. Applying the joint-defense doctrine, the court found that the two companies had common legal interests in the validity of the

patents held by Bausch & Lomb and the question of whether Bausch & Lomb's products infringed other patents. The court recognized that the two companies could have "anticipated joint litigation," despite the fact that the nonparty did not ultimately purchase the division.

> [A]t the time defendant and [nonparty] GEC were negotiating it seemed quite likely that defendant and GEC would be sued by plaintiff and that in that litigation defendant and GEC would be identically aligned, fighting to protect interests distinguished only by the time frame in which the marketing took place.

*Id.* at 310.

Here, nonparty Insight supplies to the defendant the very products alleged to be infringing by plaintiff. Similar to the nonparty in *Transmirra Products*, Insight was the subject of separate litigation involving the same patents and the same products. While Insight and plaintiff settled the claims against Insight in the prior litigation, Insight still has a vested interest in the success of the United States's defense in this action. Most importantly, under the "Patent Indemnity Clause," included in the terms of the contract, Insight is required to indemnify the defendant against all infringement claims arising from the performance of the contract. *See* 48 C.F.R. §§ .52.227–3, 252.211–7003. Under the mandatory "Notice and Assistance Clause," Insight is also under a duty to provide "all evidence and information" pertaining to any infringement suit arising out of the performance of the contract. *See* 48 C.F.R. § 52.227–2. Thus, by its terms, the duty imposed contemplates litigation affecting the interests of Insight and the government. *Cf. Hewlett–Packard,* 115 F.R.D. at 310 (negotiation for sale of business aligned interests of defendant and nonparty for purposes of patent opinion letter); *Stix Prods.,* 47 F.R.D. at 338 (nonparty was under threat of litigation involving same patent as plaintiffs, with whom communication was shared); *Stanley Works,* 35 F.R.D. at 554–55 (nonparty and plaintiff were joint licensors involving the patent at suit). Finally, Insight and the

defendant maintain a relationship through the contract under which Insight provides the allegedly infringing products to the defendant.

The settlement agreement between plaintiffs and Insight also recognized the possibility that Insight may be held liable for infringement by the United States. (*See* Def.'s Mot. of 5/8/98, app. F.) The agreement provides that "Meyers shall make no claim and take no legal action against Insight with respect to Illuminators such as the AN/PEQ–2 or any other Illuminator, unless and until Meyers asserts a Government Claim [under 28 U.S.C. § 1498] and there has been a Final Disposition of that Government Claim." It further states: "Nothing contained in this Agreement, nor any claim, argument or defense asserted or omitted by the United States Government with respect to a Government Claim shall waive or relinquish any defense, claim, counterclaim, or legal argument that Insight or Meyers may have concerning Illuminators. . . ." Thus, despite the fact that Insight and plaintiffs settled their litigation, Insight may still be exposed to liability.

The interests of Insight and the government are more closely aligned than the interests that were found to be common in prior case law. Because of the indemnification clause in Insight's contract with the government, Insight's interests are not merely aligned with the government, they are identical. Any liability that is assessed against the government would likely burden Insight. Thus despite the fact that Insight has settled plaintiffs' claims against it, the specter of liability for a claim against the government still looms.

## CONCLUSION

Insight and the government share a sufficiently common interest in defending against plaintiffs' claims against the United States that any communications disclosed by Insight to attorneys for the United States do not lose their privileged or protected status by such disclosure.[7] Defendant's and Insights mo-

---

7. Plaintiffs argue that protecting the communications between defendant and Insight is inappro-

priate because (1) neither defendant nor Insight has submitted a privilege log, thereby waiving

tions for a protective order are thus granted as to document request three, subsections (a) and (d), of plaintiffs' second set of interrogatories, filed on January 13, 1998. To the extent that communications are otherwise privileged or protected, those communications shall retain their privileged or protected status despite disclosure to defendant, its attorneys, or their agents.

any assertion of privilege; (2) the particular communications must be confidential and part of an ongoing common enterprise; and (3) the attorney-client privilege does not apply to scientific data. These arguments are not applicable at this point. The court is not determining the discoverability of any particular documents. In the event the parties cannot agree on the status of particular documents, an individual determination may be necessary.