**HILLERICH & BRADSBY CO., Plaintiff,**

v.

**Jack W. MacKAY, et al., Defendants.**

**No. 98–197 RMU.**

United States District Court,
District of Columbia.

Oct. 29, 1998.

Gregory Andrew Castanias, Jones, Day, Reavis & Pogue, Washington, DC, for Defendants.

Paul Eugene Mirengoff, Hunton & Williams, Washington, DC, for Plaintiff.

## MEMORANDUM ORDER

URBINA, District Judge.

### I. Introduction

This matter comes before the court upon the plaintiff's motion to quash a subpoena *duces tecum* served upon its attorney, Harvey B. Jacobson, Jr., Esq., by the defendants. The discovery dispute centers on whether the defendants had an attorney-client relationship with Mr. Jacobson, who also represented the plaintiff. The defendants' subpoena *duces tecum* requested documents relating to a patent application Mr. Jacobson prepared, which listed the defendants as co-inventors.[1]

The plaintiff, Hillerich & Bradsby Co. ("H & B"), based its motion to quash the subpoena *duces tecum* on two grounds: (1) the attorney-client privilege makes the documents privileged, and (2) the documents deserve trade secret protection. Two of the seven defendants, Kaye MacKay and J.W. ("Tripp") MacKay, III (the "MacKays"), filed an opposition to the motion to quash.

After considering the parties' submissions and the relevant law, the court concludes the MacKays and H & B became joint clients of Mr. Jacobson with respect to the pending patent application. As joint clients the MacKays are entitled to Mr. Jacobson's files and have demonstrated a need for their attor-

ney's files. Furthermore, the protective order entered in the Texas case will safeguard the confidentiality of the information in Mr. Jacobson's files. Accordingly, the court denies H & B's motion to quash the subpoena *duces tecum.*

### II. Background

In 1990 H & B, a manufacturer of sporting goods and equipment, hired inventor Jack MacKay, Jr. to act as a consultant.[2] (Pl.'s Mem. in Supp. of Mot. to Quash at 1.) Jack MacKay's work for H & B included research and development of new equipment. (Pl.'s Mem. in Supp. of Mot. to Quash at 1.) Pursuant to a consulting agreement, any invention, patent application, or patent developed by Jack MacKay, individually or with others, became the sole property of H & B. (Pl.'s Mem. in Supp. of Mot. to Quash at 1.) The consulting agreement required that all such patent applications and patents be assigned to H & B. (Pl.'s Mem. in Supp. of Mot. to Quash at 1.) The consulting agreement further directed Jack MacKay to make patent applications through H & B's counsel, Mr. Jacobson. (Pl.'s Mem. in Supp. of Mot. to Quash at 1–2.)

In July 1993, Jack MacKay contacted Mr. Jacobson to prepare and file a patent application directed to a unique, full barrel aluminum bat and cap he had invented. (Defs.' Resp.Ex. 2 at p. 1.) Mr. Jacobson rendered legal advice concerning the patent matter to Jack MacKay. (Defs.' Resp.Ex. 2 at p. 1.) Also, at Jack MacKay's instruction, Mr. Jacobson subsequently prepared and filed a patent application, which ultimately issued, and several applications to register trademarks in the United States and foreign patent offices. (Defs.' Resp.Ex. 2 at p. 1.) In the United States Patent Commission patent application, the Declaration and Power of Attorney form listed Mr. Jacobson as the attorney for Jack MacKay and the MacKays, who also shared credit as inventors. (Defs.' Resp.Ex. 1.) Mr. Jacobson invoiced H & B for these services. (*Id.* at p. 2.)

---

1. This discovery dispute relates to a civil action, No. 5:97–CV–244, pending in the Eastern District of Texas, Texarkana Division. Mr. Jacobson practices patent, trademark, and intellectual property law in the District of Columbia.

2. The MacKays, Kaye and Tripp, are Jack MacKay's wife and son, respectively. (Pl.'s Mem. in Supp. of Mot. to Quash at 2.)

In the Eastern District of Texas suit, H & B seeks a declaratory judgment that the MacKays possess no ownership rights in a pending patent application. (Defs.' Resp. at 1.) The MacKays issued a subpoena in this court seeking to compel the production of documents and things in the possession of Mr. Jacobson "comprising, referring or relating to the actual or potential prosecution of any patent which names Kaye MacKay and/or Jack W. (Tripp) MacKay, III as inventor(s)," as well as "all billing statements prepared for or sent to Hillerich & Bradsby Company ("H & B") concerning services rendered in connection with the actual or potential prosecution of any patent which names Kaye MacKay and/or Jack W. (Tripp) MacKay, III as inventor(s)," and "documents sufficient to evidence any payments by H & B of such billing statements." (Pl.'s Mem. in Supp. of Mot. to Quash. at 2; Pl.'s Mem. in Supp. of Mot. to Quash. Ex. 6 at p. 4.) H & B, in this district, filed a motion to quash.

Additionally, in the Texas proceeding the MacKays requested Mr. Jacobson give a deposition, and H & B filed a motion to quash the deposition before the District Court for Eastern District of Texas. (Defs.' Supp. Resp. at 2.) A magistrate judge heard the motion and, on September 23, 1998, denied H & B's motion to quash. (*Id.*) The magistrate judge, however, limited the deposition to "patent ownership issues in the litigation." (Defs.' Supp. Resp.Ex. 1.)

### III. Discussion

#### A. Attorney–Client Relationship

■ Courts have long recognized the existence of the attorney-client relationship among clients and attorneys allied in a common legal cause. *In re Regents of the Univ. of Cal.,* 101 F.3d 1386 (Fed.Cir.1996). Typically, parties jointly developing a patent with an attorney have a "common legal interest" in obtaining the greatest protection and in exploiting the patents. *Id.* at 1389. The parties thereby develop a "community of interest," which establishes a joint attorney-client relationship among them and the attorney. *See id.; see also SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 514 (D.Conn.1976) (finding the existence of the attorney-client privilege regardless of whether the legal advice focused on pending litigation or on developing a patent program that would afford the maximum protection). In this respect, when a community of interest exists, courts have viewed those represented as "joint clients" for the purpose of privilege. 101 F.3d at 1389.

■ The question of whether an attorney-client relationship exists does not necessarily depend upon who pays the fees. *See Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.1978). "A professional relationship is not dependent upon the payment of fees." *Westinghouse,* 580 F.2d at 1317; *Accord E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 388 (S.D.Tex.1969) (observing the relation of attorney and client "is not dependent on the payment of a fee"); *Allman v. Winkelman,* 106 F.2d 663, 665 (9th Cir.1939) (noting a "lawyer's advice to his client establishes a professional relationship though it be gratis"); *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 F.2d 261, 262 (D.C.Cir.1967) ("if appellant is not obligated to pay [a law firm and certain of its attorneys] for their services, it does not follow that there was no attorney-and-client relation.").

In the instant case, Mr. Jacobson has indicated he believed he "technically represent[ed]" both H & B and Jack MacKay. parties." (Defs.' Resp.Ex. 2 at p. 1.) In this respect, Mr. Jacobson believed he had entered into a "dual representation" of both Jack MacKay and H & B, "as well as the inventor's assignee or putative assignee," (Defs.' Resp.Ex. 2 at p. 1), for several reasons. First, Jack MacKay originally retained Mr. Jacobson. (Defs.' Resp.Ex. 3 at p. 1). Second, from the outset, Mr. Jacobson took instructions almost exclusively from Jack MacKay. (*Id.*) Third, H & B never instructed Mr. Jacobson to secure an assignment from Jack MacKay to H & B for any of his inventions prior to Mr. Jacobson's preparing and filing of the patent applications. (*Id.*) Fourth, from the outset Mr. Jacobson had understood the issue of assignment of the patents to constitute an internal matter between Jack MacKay and H & B. (*Id.*) And fifth, Mr. Jacobson had sent copies of his

correspondence with Jack MacKay to H & B. (*Id.*)

For these services, however, Mr. Jacobson always sent his invoices to H & B. (*Id.* at p. 2.) Thus, H & B retained and paid Mr. Jacobson to render legal advice in connection with the preparation and the prosecution of these patents. (Pl.'s Mem. in Supp. of Mot. to Quash at 2.) Consequently, H & B contends only it, and neither Jack MacKay nor the MacKays, had an attorney-client relationship with Mr. Jacobson. In contradiction, the MacKays believe they had a joint representation arrangement, along with Jack MacKay and H & B, with Mr. Jacobson.[3]

Thus, H & B, by contractual agreement, directed Jack MacKay to work through Mr. Jacobson in the filing of patent applications. By contractual agreement, H & B further directed Jack MacKay to do so regardless of whether the invention developed individually or with others. Jack MacKay appears to have complied with this agreement in applying for the patent for the aluminum bat and directing related legal questions to Mr. Jacobson. This conduct shows that both Jack MacKay and H & B had a common legal interest in the development of the aluminum bat patent application. Furthermore, both the documentation submitted to the Patent Commission and the correspondence by Mr. Jacobson reflecting his understanding name the MacKays as co-inventors. While H & B assumed the cost of the legal representation, the question of the existence or mutuality of the attorney-client relationship does not turn upon the payment of fees. *E.F. Hutton & Co. v. Brown*, 305 F.Supp. at 388. The court concludes from these factors that the MacKays also shared the same common legal interest as H & B and Jack MacKay. Accordingly, the court rules the MacKays had a joint attorney-client relationship with Mr. Jacobson.

Moreover, the MacKays have a need for Mr. Jacobson's files. In the Texas lawsuit, H & B claims Jack MacKay surreptitiously added the MacKays to the patent application as co-inventors to defraud H & B. (Defs.' Resp. at 6.) The MacKays believe Mr. Jacobson's files will demonstrate that the MacKays made a significant contribution to the invention and that Jack MacKay hid nothing from H & B. (*Id.*) Thus, the MacKays need Mr. Jacobson's files to defend themselves against H & B's claims.

In this respect, once parties have entered into litigation with one another, neither may assert an earlier common privilege to preclude testimony against the other on an issue that they shared before the litigation. *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 855 (7th Cir.1974). *Accord Athridge v. Aetna Cas. and Sur. Co.*, 96–CV–2708, 1998 WL 429661, at *4 (D.D.C. July 29, 1998) (citing *Catino v. Travelers Ins. Co.*, 136 F.R.D. 534, 537 (D.Mass.1991); *Shapiro v. Allstate Ins. Co.*, 44 F.R.D. 429, 431 (E.D.Pa. 1968)).

### B. Trade Secret Protection

In its motion to quash the subpoena, H & B also asserted that the sought after information relates to the development of new sporting equipment and patent applications and thereby deserves trade secret protection pursuant to Fed.R.Civ.P. 26(c)(7). (Pl.'s Mem. in Supp. of Mot. to Quash. at 3.) The MacKays do not dispute this issue. (Defs.' Resp. at 6.) In fact, they assert that as joint inventors they have an identical interest in protecting this information from disclosure to third parties. (*Id.*)

The MacKays point to the existence of an agreed upon Protective Order, which they and H & B have entered into in the Texas litigation. The Protective Order protects the disclosure of any confidential information relating to the patent application. (Defs.' Resp. at 6.)

The court finds the MacKay's argument persuasive on this issue. Accordingly, the court exercises its authority under Fed. R.Civ.P. 26(c)(7) and orders that any and all disclosures made pursuant to the MacKay's subpoena *duces tecum* be had in accordance

---

**3.** Mr. Jacobson believes that while each of the individual inventors have entitlement to his files relating to the patent application, instructions from H & B preclude him from producing them. He has indicated an intent to remain neutral and await a decision from the court resolving the dispute. (Defs.' Resp.Ex. 7 at. p. 1.)

with the Protective Order already issued in the Texas litigation.

## IV. Conclusion

The court concludes the MacKays, along with H & B and Jack MacKay, shared a joint attorney-client relationship with Mr. Jacobson. Therefore, the MacKays have entitlement to the sought after information in Mr. Jacobson's files relating to that representation and the patent application for the aluminum bat. Furthermore, the information constitutes a trade secret, and therefore disclosure may only occur pursuant to the Protective Order issued in the Texas litigation.

**ORDERED** that the plaintiff's motion to quash the subpoena *duces tecum* to Harvey Jacobson, Jr., Esq. be and is hereby **DENIED**; and,

in light of the November 3, 1998 date for the commencement of jury selection, it is

**FURTHER ORDERED** that the plaintiff shall have until Friday, October 30, 1998, 5:00 p.m. (Eastern Standard Time), to provide defendants with the subpoenaed material; and it is

**FURTHER ORDERED** that this miscellaneous case be closed.

**SO ORDERED.**

## *ORDER*

For the reasons set forth in the attached memorandum opinion for the above-captioned case, it is this 29 day of October, 1998,

**ORDERED** that the plaintiff's motion to quash the subpoena *duces tecum* to Harvey Jacobson, Jr., Esq. be and is hereby **DENIED**;

in light of the November 3, 1998 date for the commencement of jury selection, it is

**FURTHER ORDERED** that the plaintiff shall have until Friday, October 30, 1998, 5:00 p.m. (Eastern Standard Time), to provide defendants with the subpoenaed material; and it is

**FURTHER ORDERED** that this miscellaneous case be closed.

**SO ORDERED.**